[No. A078977. First Dist., Div. Three. Nov. 30, 1998.]

MARCUS & MILLICHAP REAL ESTATE INVESTMENT BROKERAGE COMPANY et al., Plaintiffs and Appellants, v. HOCK INVESTMENT COMPANY et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B. and II.C.

84

**COUNSEL**

Marcus & Millichap and Paul S. Mudrich for Plaintiffs and Appellants.

Bryant, Clohan, Eller, Maines & Baruh, Jeffrey A. Baruh, Andrew L. Fagan, Foley McIntosh, Kenneth W. Pritikin, Kay & Tawasha, Randall E. Kay and Pamela J. Ortiz for Defendants and Respondents.

**OPINION**

**PARRILLI, J.**—Marcus & Millichap Real Estate Investment Brokerage Company (Marcus & Millichap or Broker) appeals from a trial court order denying its petition to compel arbitration. We conclude the trial court correctly found there was no agreement to arbitrate the dispute at issue. Consequently, we affirm.

I

FACTS

This case arises from a real estate transaction in which Hock Investment Company and Bryan Silverstein (buyers) purchased a 79-unit apartment complex from Country Club Partners (sellers). Marcus & Millichap represented both the sellers and the buyers in the transaction.

After the sale closed, buyers filed suit against sellers (including nine individual partners) alleging that sellers had misrepresented and concealed certain plumbing problems in the complex. The original complaint also named the sellers' agent, Marcus & Millichap, as a defendant and alleged Marcus & Millichap was negligent for failing to discover and disclose the plumbing defects. However, the buyers dismissed the claim against Marcus & Millichap without prejudice when they learned the claim might not be covered by Marcus & Millichap's insurance. Before it was dismissed as a

defendant, Marcus & Millichap never claimed the suit was subject to arbitration.

Subsequently, most of the *sellers* filed cross-complaints for indemnity against Marcus & Millichap and two of their own codefendants: Dean Sandquist, who was one of the sellers and was also the listing agent on behalf of Marcus & Millichap, and his wife, Diane Sandquist, who managed the property for sellers and was an individual seller as well. About two months after it was brought back into the action as a cross-defendant, Marcus & Millichap filed a petition to compel arbitration.

In its petition to compel arbitration, Marcus & Millichap contended the entire action against it was subject to arbitration. The only basis for this claim was an arbitration clause in the purchase agreement between the buyers and sellers. That clause provided in pertinent part:

"ARBITRATION OF DISPUTES: If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein (including but not limited to the parties' rights to . . . the payment of commissions as provided herein), *Buyer, Seller and Agent agree* that such controversy shall be settled by final, binding arbitration . . . .

"Notice: By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the 'Arbitration of Disputes' provision decided by neutral arbitration as provided by California law and you are giving up any rights you might possess to have the dispute litigated in court or jury trial. By initialing in the space below you are giving up your judicial rights to discovery and appeal . . . . Your agreement to this arbitration provision is voluntary.

"We have read and understand the foregoing and agree to submit disputes arising out of the matters included in the 'Arbitration of Disputes' provision to neutral arbitration.[1]

"Buyer's Initials */s/___ Seller's Initials ___*" (Italics added.)

Although the buyers initialed this provision, the sellers did not. Moreover, the sellers did not agree to arbitration in any of the various counteroffers that went back and forth between the parties.

The sellers (with the exception of the Sandquists) and all of the buyers opposed the petition to compel arbitration on the ground, inter alia, that the

---

[1] The language of the notice, although not the arbitration provision itself, is required by statute. (Code Civ. Proc., § 1298, subd. (c); see fn. 5, *post*, for full text.)

sellers never agreed to the arbitration provision in the purchase agreement, and thus there was no enforceable arbitration agreement.

However, at the hearing on the petition to compel arbitration, Marcus & Millichap attempted to rely on new evidence to support an entirely different basis for compelling arbitration. In particular, the day before the hearing, Marcus & Millichap filed the declaration of its agent, Dean Sandquist, in which Mr. Sandquist stated there was an enforceable arbitration clause in the listing agreement between Marcus & Millichap and the sellers.[2] The court did not allow Marcus & Millichap to rely on this 11th hour theory, and denied the petition to compel arbitration.[3] The court's written order stated it was denying the petition to compel arbitration on the ground "there is not a binding, enforceable agreement to arbitrate the controversy between plaintiffs, defendants and petitioner MARCUS & MILLICHAP."

*Motion for Reconsideration*

After the court denied the petition to compel arbitration, Marcus & Millichap filed a motion for reconsideration or, in the alternative, for relief under Code of Civil Procedure section 473. The motion was based on the fact the court did not consider the Sandquist declaration at the original

[2] The Sandquist declaration stated in pertinent part: "In the capacity as the listing sales agent, I met with the managing partner for the twelve sellers/owners, Mr. Robert Lee, who negotiated with . . . me the terms of the [Listing Agreement]. In negotiating the terms of the Listing Agreement, I explained to Mr. Lee the terms of the arbitration clause set forth at paragraph 21 of the Listing Agreement. Mr. Lee indicated to me that he as managing partner and on behalf of the sellers/owners, wanted to arbitrate with the American Arbitration Association any and all disputes that might arise out of Marcus & Millichap's listing. For that reason, Mr. Lee placed his initials following paragraph 21 in the Listing Agreement to indicate his and the twelve sellers'/buyers' agreement to arbitrate all disputes that might arise with respect to the subject matter of their Listing Agreement . . . . [¶] In negotiating the Purchase Agreement between Plaintiffs herein and Mr. Lee, I again made clear to Mr. Lee that the same contained another arbitration agreement at paragraph 25. Mr. Lee again indicated his approval of including an arbitration agreement in the Purchase Agreement with Plaintiffs herein. Based on Mr. Lee's initialing the arbitration agreement in Marcus & Millichap's Listing Agreement, which specifically referenced future transactions, and Mr. Lee's verbal representation to me that he approved of the inclusion of the arbitration agreement in the subject Purchase Agreement with Plaintiffs herein, I believe that Mr. Lee's failure to initial paragraph 25 in the Purchase Agreement was an inadvertent mistake on his part."

[3] The court stated: "The premise of this motion was an agreement that is not an agreement. . . . A listing agreement that contains a clause might, I suppose, bind two of the parties here. . . . [¶] . . . [¶] In other words, it may be you have a different premise upon which . . . to seek arbitration. But certainly on a declaration filed at the eleventh hour . . . raising a new issue . . . I don't see how I can possibly begin to grant the motion. . . . [¶] I don't see how I can grant a motion where they don't even have notice of the fact that that's the basis of the motion."

hearing. Marcus & Millichap contended the Sandquist declaration established there were "new or different facts" within the meaning of Code of Civil Procedure section 1008, or that the order was taken against Marcus & Millichap through its "mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473.)

In particular, Broker argued the listing agreement contained an arbitration clause that the sellers and the agent (Marcus & Millichap) had both initialed.[4] After a brief hearing, the court denied the motions to reconsider and for relief under Code of Civil Procedure section 473. This timely appeal followed.

## II

### DISCUSSION

#### A. *The Petition to Compel Arbitration.*

 We first consider whether the trial court erred when it denied Broker's original petition to compel arbitration on the ground there was no agreement to arbitrate. We conclude the trial court acted properly.

 Code of Civil Procedure section 1281.2 provides in material part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy . . . , the court shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists . . . .*" (Italics added.) Thus, "[t]he right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]" (*Engineers & Architects Assn.* v. *Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) There is

---

[4]The clause provided in pertinent part:

"ARBITRATION OF DISPUTES: If a controversy arises with respect to the subject matter of this Representation Agreement or the transaction contemplated herein (including but not limited to the parties' rights to . . . the payment of commissions as provided herein), Buyer, Seller and Agent agree that such controversy shall be settled by final, binding arbitration . . . .

"Notice: By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the 'Arbitration of Disputes' provision decided by neutral arbitration as provided by California law and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial. By initialing in the space below you are giving up your judicial rights to discovery and appeal . . . . Your agreement to this arbitration provision is voluntary.

"We have read and understand the foregoing and agree to submit disputes arising out of the matters included in the 'Arbitration of Disputes' provision to neutral arbitration.

"Seller's Initials /s/____ Agent's Initials /s/____"

no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate. (*Ibid.*) It follows that when presented with a petition to compel arbitration, the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute.

We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate. (*Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1023 [1 Cal.Rptr.2d 265], disapproved on another point in *Rosenthal* v. *Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407 [58 Cal.Rptr.2d 875, 926 P.2d 1061]; *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 637 [223 Cal.Rptr. 838].) Since the extrinsic evidence in this case consists entirely of written declarations, we review this issue de novo. (*Mayhew* v. *Benninghoff* (1997) 53 Cal.App.4th 1365, 1369 [62 Cal.Rptr.2d 27]; *Patterson* v. *ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1663 [18 Cal.Rptr.2d 563].)

██ Here, Broker's original petition to compel arbitration was based entirely on the arbitration clause in the purchase agreement between the sellers and buyers. As we have indicated, although the buyers initialed the arbitration clause as part of their offer to purchase the property, the sellers never initialed this provision or otherwise indicated they accepted this provision in their counteroffers. Again, the actual "ARBITRATION OF DISPUTES" clause states: "If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein . . . *Buyer, Seller and Agent agree* that such controversy shall be settled by final, binding arbitration." (Italics added.) Although buyers assented to this provision, sellers did not. Applying general California contract law to this fact pattern, we conclude that although the buyers *offered* to include the arbitration provision as part of the purchase agreement, the sellers did not accept that offer. The terms of an offer must be " 'met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract . . . ; and a qualified acceptance amounts to a new proposal or counteroffer *putting an end to the original offer* . . . .' " (*Panagotacos* v. *Bank of America* (1998) 60 Cal.App.4th 851, 856 [70 Cal.Rptr.2d 595], italics added, quoting *Apablasa* v. *Merritt & Co.* (1959) 176 Cal.App.2d 719, 726 [1 Cal.Rptr. 500].) None of the subsequent counteroffers between the buyer and seller mentioned the arbitration provision. Thus, "Buyer, Seller and Agent" did not agree to submit controversies to binding arbitration, as the arbitration clause requires.

Nevertheless, one California case has indicated that a party initialing the arbitration provision in a real estate listing contract may be bound by that

provision, even though the other party has not assented to that provision and is therefore not bound by it. (*Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 238-241 [23 Cal.Rptr.2d 281] (*Bello*).) *Bello* involved real estate listing agreements providing for arbitration of any dispute between the parties. When the broker demanded arbitration of a fee dispute, the seller objected on the ground the broker had not initialed the arbitration provision, as required by Code of Civil Procedure section 1298, subdivision (c)[5] (hereafter section 1298(c)), although the seller had done so. The seller argued the court should "read into the statute the requirement of mutuality of remedy, namely arbitration, in order for such an arbitration provision to be valid." (19 Cal.App.4th at pp. 238-239.) The *Bello* court confined its analysis to the language of section 1298(c), and did not consider general contract principles in determining whether the parties had agreed to arbitrate disputes between them. The *Bello* court concluded ". . . there is no reason to find *the statute* [section 1298(c)] requires mutuality of arbitration by necessary implication." (19 Cal.App.4th at p. 239, italics added.) Thus, the court concluded that "[a]lthough [the broker's] failure to assent in writing might have had some effect on whether it could have been required to arbitrate, the statute does not purport to vitiate [the seller's] assent in such a situation. Nothing in established contract law proscribes a contract provision from subjecting only one party to arbitration." (*Id.* at p. 239.)

The Court of Appeal, First Appellate District, Division Two, criticized *Bello* on this point in *Stirlen* v. *Supercuts, Inc.* (1997) 51 Cal.App.4th 1519 [60 Cal.Rptr.2d 138]. The *Stirlen* court stated: "To the extent [*Bello*] suggests mutuality of arbitral obligation is not required, we question the court's

[5]Section 1298, subdivision (c) provides: "Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision [in a real e sales or listing agreement] described in subdivision (a) or (b), and immediately following arbitration provision, the following shall appear:
'NOTICE: BY INITIALLING IN THE SPACE BELOW YOU ARE AGREEING TO HᴀᴠᴇD ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRA-TION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PRO-VIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALLING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVI-SION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.' 'WE HAVE READ AND UNDER-STAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.' "

analysis of this issue, which has never been relied upon by other courts and is hard to reconcile with other pertinent cases requiring mutuality of the arbitral obligation. (See, e.g., *Hull* v. *Norcom, Inc.* (11th Cir. 1985) 750 F.2d 1547, 1550 ['the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified class of claims']; see also *Saika* v. *Gold* (1996) 49 Cal.App.4th 1074 [56 Cal.Rptr.2d 922].)" (*Stirlen* v. *Supercuts, Inc., supra,* 51 Cal.App.4th at pp. 1538-1539, fn. omitted.)

We agree with the criticism of *Bello*,[6] but conclude that, in order to decide this case, we need not determine whether mutuality of arbitration is always required. This is because, even if mutuality of the arbitral obligation is not generally required, it is clear the terms of the purchase agreement in this case contemplate that both buyer and seller must be bound before either is bound to arbitrate. Again, the actual arbitration clause to which buyers assented states: "If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein . . . *Buyer, Seller and Agent agree* that such controversy shall be settled by final, binding arbitration." This clause clearly contemplates that *all* parties must agree to the clause in order for it to be effective.

Thus, even if we accept the *Bello* court's holding that section 1298(c) does not impose a requirement of "mutuality of remedy," it does not follow that the notice provision required by that statute negates a requirement of mutuality that the contract itself imposes.[7]

In sum, we conclude that, read as a whole, the purchase agreement in this case contemplated that the arbitration of disputes provision would be effective only if both buyers and sellers assented to that provision. Since the sellers did not assent to this provision the parties did not agree to binding arbitration.

*The Federal Arbitration Act.*

Broker next contends the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts section 1298(c)'s notice and initialing requirement. However,

---

[6]We note that if there were no mutuality of remedy requirement, the seller—which is usually the offeree in the real estate sales context—would have absolutely no incentive to initial the arbitration provision and thereby bind itself to arbitrate disputes. This is because, under the *Bello* court's analysis, the offeror (usually the buyer) would be bound to arbitrate all disputes (provided it had initialed the arbitration provision) even if the seller did not agree to do so. Thus, once the buyer initialed this provision, the seller could have its cake and eat it too: the seller could force the buyer to arbitrate if the seller thought it was in its interest to do so, and could refuse to arbitrate if it believed it was disadvantageous to do so.

[7]In this regard, we note the *Bello* court never quoted or discussed the full arbitration provision in the contracts before it. Instead, the *Bello* court confined its analysis to whether section 1298(c) *imposed* a mutuality requirement.

even if this is true, we nevertheless conclude there was no agreement to arbitrate here, because under the contractual language at issue the parties did not agree to be bound by the arbitration clause.

In *Doctor's Associates, Inc.* v. *Casarotto* (1996) 517 U.S. 681 [116 S.Ct. 1652, 134 L.Ed.2d 902], the United States Supreme Court held the FAA preempted a Montana statute requiring that, in order to be effective, arbitration clauses must appear on the first page of a contract in underlined capital letters. The Supreme Court noted section 2 of the FAA declares written provisions for arbitration " 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " (517 U.S. at p. 686 [116 S.Ct. at p. 1656], quoting 9 U.S.C. § 2, italics omitted.) The court reaffirmed its earlier rulings that "the text of § 2 declares that state law may be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' [Citation.] Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. [Citations]. [¶] Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions. . . . Montana's [arbitration notice statute] directly conflicts with § 2 of the FAA because the State's law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act." (517 U.S. at pp. 686-687 [116 S.Ct at p. 1656], italics omitted.)

If this case involved a situation where the contract did not include the notice section 1298(c) requires, and a party were seeking to avoid arbitration on that basis, we might agree with Broker that the FAA would preclude the party from making that argument. However, that is not the situation this case presents. Instead, the purchase agreement in this case did include the section 1298(c) notice and that notice and initialing provision therefore became a part of the contract. As we have already indicated, applying general California contract law to the words of the contract, we conclude the contract contemplated that the arbitration of disputes provision would be effective only if both buyers and sellers assented to that provision by initialing it. Since the sellers did not initial that provision, it did not become effective. The FAA does not preempt this analysis, which is based on California law concerning the formation and interpretation of contracts generally. (*First Options of Chicago, Inc.* v. *Kaplan* (1995) 514 U.S. 938, 944 [115 S.Ct. 1920, 1924, 131 L.Ed.2d 985] ["When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary

state-law principles that govern the formation of contracts."]; *Progressive Cas.* v. *C.A. Reaseguradora Nacional* (2d Cir. 1993) 991 F.2d 42, 46 [FAA " 'preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.' "]; see also *Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 410 [holding that FAA does not preempt California's special procedure (Code Civ. Proc., §§ 1281.2 and 1290.2) for determining arbitrability].)

In short, because the words of the contract indicate the buyers and sellers did not agree to arbitration, we must conclude there was no arbitration agreement to enforce.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The judgment (Order Denying Petition to Compel Arbitration) is affirmed. Costs to respondents.

Corrigan, Acting P. J., and Walker, J., concurred.

---

*See footnote, *ante,* page 83.