NEW LINE PRODUCTIONS, INC., a California corporation; and New Line Cinema Corp., a Delaware corporation, Plaintiffs—Appellants,

v.

LITTLE CAESAR ENTERPRISES, INC., a Michigan corporation, Defendant—Appellee.

No. 99–56187.

D.C. No. CV 97–07073 DT (SHx).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2001.

Decided May 18, 2001.

Before BEEZER, T.G. NELSON, and BERZON, Circuit Judges.

MEMORANDUM *

New Line Productions, Inc., and New Line Cinema Corp. (collectively, "New Line") appeal the district court's adverse grant of summary judgment in their diversity action against Little Caesar Enterprises, Inc. ("Little Caesars") for breach of contract and related claims. We reverse the order granting summary judgment and remand for further proceedings. Because the facts are familiar to the parties, we

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

recount them only as necessary to explain our decision.

■ 1. The fact that the signed document dated July 9, 1997 (the "July agreement") includes the phrase "[t]his is not the contract," does not establish as a matter of law that it is without binding effect. In *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir.1996), we found unenforceable a signed agreement that expressly stated: "[T]his letter of intent is of no binding effect on any party hereto." *Id.* at 312. The meaning of the assertedly comparable statement in this case is nowhere near as clear, particularly when considered in context: "This is not the contract, but *will secure your plans and commitments to the project,* and gives New Line Cinema, as well as Little Caesars, *the approval to announce the deal* to the public...."

Given this wording and other evidence, there is a question of fact whether the phrase "This is not the contract" meant only that a more detailed, long-form agreement prepared by New Line's attorneys was soon to follow. *See Rennick,* 77 F.3d at 311 ("[I]n appropriate circumstances, [a letter of intent] could manifest agreement...."); *Ersa Grae Corp. v. Fluor Corp.,* 1 Cal.App.4th 613, 624 n. 3, 2 Cal. Rptr.2d 288 (Cal.Ct.App.1991).

■ 2. Nor is it dispositive that the July agreement left certain matters undecided. The missing terms identified by the district court appear not to be essential to the agreement. "If the [missing] term is not essential, then the contract will be deemed binding." *Roth v. Garcia Marquez,* 942 F.2d 617, 627 (9th Cir.1991). Morever, the July agreement is substantially similar to the unconsummated May 23 Letter of Understanding with respect to the topics covered and the degree of detail. Yet, the May 23 letter stated expressly that while "[t]he parties contemplate that more extensive and/or additional agreements ... may be executed, ... [t]his

Letter of Agreement shall be binding." There is a triable question whether the parties had the same understanding with regard to the July agreement.

■ 3. The fact that Mary Goss once acknowledged that Ilitch Jr. needed "internal approval" of certain modifications also fails to establish that no contract was formed as a matter of law. Goss may have understood that Ilitch Jr. needed approval to sign the July agreement, not that he was unauthorized to sign such an agreement under any circumstances. This understanding would have been consistent with Michael Ilitch Sr.'s deposition testimony. When asked, "with your approval, who else at the company could sign a deal like this," Ilitch Sr. replied: "Anybody that I would designate." Goss may simply have assumed that Ilitch Jr. had obtained any necessary authorization before executing the document, a reasonable supposition in light of Ilitch Jr.'s prior representation that Ilitch Sr. had agreed to the "basics of the deal."

4. Little Caesars argues that Goss did not unequivocally accept the July Agreement because she did not initial the interlineated changes before signing. But *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.,* 68 Cal.App.4th 83, 80 Cal.Rptr.2d 147 (Cal.Ct. App.1998), cited in support of this proposition, held only that *a particular term* of a contract not ratified by initials was not enforceable, where the contract expressly required initials for that provision in a designated space. *Id.* at 86, 80 Cal. Rptr.2d 147. Here, in contrast, the July agreement did not expressly require the parties' initials; Little Caesars seeks to have the entire agreement declared unenforceable rather than merely the uninitialed clauses; and Goss does not dispute that she intended to accept the handwritten modifications. Under these circum-

stances, the absence of initials does not necessarily indicate that no meeting of the minds occurred.

■ 5. Little Caesars also contends that Goss could not have accepted the agreement since New Line had already proposed a counteroffer, namely, the long-form contract, by the time Goss *signed* the July agreement. But California law does not require a written signature to form a binding contract under the circumstances presented here, because the July agreement does not come within the statute of frauds. *See* Cal. Civ.Code § 1624; *Far West Servs., Inc. v. Livingston*, 156 Cal. App.3d 931, 939, 203 Cal.Rptr. 486 (Cal.Ct. App.1984). There is evidence that would support the conclusion that Goss orally communicated her consent to the agreement, including Ilitch Jr.'s interlineations, before the long-form contract was transmitted. Thus, even assuming the long-form contract can be considered a counteroffer, which is not clear, Little Caesars' argument at best raises a factual question about when the July agreement was accepted.

■ 6. Goss' statements after signing the agreement concerning Little Caesars' rights to pursue ancillary windows do not establish that no meeting of the minds occurred. Whatever the ordinary meaning of the phrase "right of first refusal," there is evidence supporting the conclusion that both Goss and Ilitch Jr. understood that handwritten term in the agreement to bestow on Little Caesars only an exclusive negotiating window, consistent with Goss' remarks. A genuine issue of material fact remains regarding the parties' intent.

7. We reject the argument that, as a matter of law, Ilitch Jr. lacked authority to bind Little Caesars. We find instead that there is sufficient evidence to support a jury finding that Ilitch Jr. possessed either actual or ostensible authority to act on behalf of Little Caesars with respect to the July agreement.

"Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Cal. Civ.Code § 2316. Here, there are numerous facts to suggest that Little Caesars, through want of ordinary care, allowed Ilitch Jr. to believe that he had authority to commit the company to the July agreement. For example, with the knowledge of Little Caesars, Ilitch Jr. engaged in extensive negotiations with New Line regarding the movie promotion. After discussing the deal with Ilitch Jr., Little Caesars' in-house counsel prepared a document memorializing the agreement to date. Ilitch Jr. caused that document to be sent to New Line, apparently without seeking authorization from any other person. There is no indication that anyone at Little Caesars objected after learning of this development.

■ "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Cal. Civ.Code § 2317. "Ostensible authority is not established by the statements and representations of the agent." *Dill v. Berquist Constr. Co.*, 24 Cal.App.4th 1426, 1438 n. 11, 29 Cal.Rptr.2d 746 (Cal.Ct.App. 1994). "Under California law, the existence of ostensible authority is a question of fact, *Yanchor v.. Kagan*, 22 Cal.App.3d 544, 550, 99 Cal.Rptr. 367, 371 (1971)." *Bell v. Exxon Co., U.S. A.*, 575 F.2d 714, 715 (9th Cir.1978).

Little Caesars permitted Ilitch Jr. to preside over a meeting concerning the movie promotion that was held in a Little Caesars conference room and attended by high-ranking New Line and Little Caesars personnel. One of the attendees, a Senior Vice–President at Little Caesars, was

"concerned that people not misinterpret [Ilitch Jr.'s] role in this." Another attendee, an executive in Little Caesars' marketing department, recalled "question[ing] Mike Ilitch Jr.'s authority and ability to be entering this." Neither took steps to disabuse New Line of any false impressions that may have been created.

On the basis of these facts and others like them, there is sufficient evidence for a jury to find that Ilitch Jr. had authority to bind Little Caesars.

■■■ 8. Summary judgment on the promissory estoppel claim was improper because, for reasons similar to those underlying our conclusion that summary judgment was inappropriate on the contract issue, there is a triable issue of fact concerning whether the July agreement constituted a promise upon which New Line was entitled to rely. As to the misrepresentation and fraud claims, there are triable issues of fact concerning whether reliance was reasonable, both because there may have been an enforceable contract and because Illitch Jr. may have had actual or ostensible authority.

"If we find a contract to be ambiguous, we 'ordinarily' are hesitant to grant summary judgment 'because differing views of the intent of parties will raise genuine issues of material fact.'" *San Diego Gas & Electric Co. v. Canadian Hunter Marketing Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997) (quoting *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 898 (9th Cir.1993)). Here, factual questions remain regarding the parties' intent to form a binding contract. Summary judgment was therefore inappropriate.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

REVERSED and REMANDED for further proceedings.