[No. A107322. First Dist., Div. Five. Apr. 27, 2005.]

JOHN WESTRA et al., Plaintiffs and Respondents, v.
MARCUS & MILLICHAP REAL ESTATE INVESTMENT BROKERAGE
COMPANY, INC., et al., Defendants and Appellants.

[CERTIFIED FOR PARTIAL PUBLICATION*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.2.

**COUNSEL**

Cooper, White & Cooper, William H. G. Norman, John M. Ross, Jill B. Rowe and Nancy G. Berner for Defendants and Appellants.

Miller & Beck, Eric D. Miller and Georgetta Beck for Plaintiffs and Respondents.

**OPINION**

**STEVENS, J.**—Appellants, Marcus & Millichap Real Estate Investment Brokerage Company, Inc., and certain present or former employees thereof (collectively, MM), challenge an order of the trial court that denied MM's petition to compel arbitration. The petition sought arbitration of claims of real estate fraud brought against MM by respondents John Westra, Eloise Westra, and the John J. Westra Family Trust Dated February 25, 1999 (the Westras). We reverse and remand with instructions to grant the petition to compel arbitration.

### I. *FACTS AND PROCEDURAL HISTORY*

The Westras filed this action, alleging fraud and other claims, in connection with their 1999 purchase of a certain parcel of real estate, an Arco gas station in King City, California. One defendant in the Westras' action was the seller of the gas station, a partnership, Skyline 23 King City, LP (Skyline). Another

defendant was the real estate agent and broker in the transaction, MM. Yet another defendant, not a party to this appeal, was the tenant of the gas station, Paul Tran, who has since filed for bankruptcy and disappeared. The Westras charged that Tran was already insolvent and on the verge of bankruptcy at the time of the sale, and this crucial fact was concealed from them until after they purchased the property occupied by Tran.

The purchase agreement is a form contract entitled "Marcus & Millichap Purchase Agreement" that identifies the Westras as the "Buyers" and identifies Skyline as the "Sellers," while referring to MM as the "Agent." The agreement contains an arbitration provision, providing in pertinent part as follows: "28) ARBITRATION OF DISPUTES: If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein (including but not limited to the parties' rights to the Deposit or the payment of commissions as provided herein), Buyer, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

This provision is followed by lines upon which the Westras and Skyline could place their initials indicating their consent, and they did so. There is no line provided upon which MM could initial or consent to the arbitration provision, and MM did not do so. In fact, MM did not sign the purchase agreement itself, even though it contained a signature line for MM stating, "Agent accepts and agrees to the foregoing," which followed a crossed-out provision for a commission payment to MM for arranging the transaction. MM apparently obtained its real estate agent's commission on the transaction by virtue of some other separate arrangement with Skyline.

Both Skyline and MM filed petitions to compel arbitration of the claims against them, relying on the arbitration provision in the purchase agreement between the Westras and Skyline. The Westras filed opposition to the petitions. The trial court granted the petition to compel arbitration as to Skyline, but denied the petition as to MM. This appeal by MM followed.

## II. DISCUSSION

### A. Standard of Review

■ This appeal raises issues of law that are subject to our de novo review and independent judgment. (See *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212 [78 Cal.Rptr.2d 533].)

### B. *MM Was Entitled to Arbitrate the Claims Against It*

MM maintains that the trial court's order denying its petition to compel arbitration was erroneous. While MM does not claim that it is a party to the purchase agreement, it contends the trial court erred by denying MM's petition to compel arbitration because: (1) MM was entitled to enforce the arbitration agreement as an agent for a signatory party; (2) the other parties agreed to arbitration; (3) MM was also an intended third party beneficiary of the arbitration agreement; and (4) arbitration of all claims together in a "single trial" would be preferable to pursuing one set of claims in arbitration and the other in litigation. The first two arguments are meritorious, as we discuss below. The other two arguments are also arguably correct, but moot, as we discuss below.

### 1. *MM Was an Agent of a Signatory Party to the Agreement.*

Generally speaking, one must be a party to an arbitration agreement to be bound by it or invoke it. " 'The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration. [Citation.]' " (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142 [119 Cal.Rptr.2d 489], citing *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358].)

The Westras point out that MM never signed, or became a party to the purchase agreement and its arbitration provision. Consequently, the Westras made the argument, apparently accepted by the trial court, that MM was not bound by the provision and could not invoke it. We do not agree, for the reasons that follow.

The Westras maintain that if MM was to be a party to the arbitration agreement, it was required to separately initial the arbitration provision, pursuant to Code of Civil Procedure section 1298,[1] which sets out the procedural requirements for arbitration provisions in real estate contracts. Section 1298 provides, in pertinent part: "(a) Whenever any contract to convey real property, or contemplated to convey real property in the future, . . . contains a provision for binding arbitration of any dispute between the principals in the transaction, the contract shall have that provision clearly titled 'ARBITRATION OF DISPUTES.' [¶] . . . [¶] (b) Whenever any

---

[1] All subsequent statutory references are to the Code of Civil Procedure, unless otherwise indicated.

contract or agreement between principals and agents in real property sales transactions, including listing agreements, . . . contains a provision requiring binding arbitration of any dispute between the principals and agents in the transaction, the contract or agreement shall have that provision clearly titled 'ARBITRATION OF DISPUTES' [¶] . . . [¶] (c) *Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision described in subdivision (a) or (b)*, and immediately following that arbitration provision" a statutory form of notice in bold type shall appear. (Italics added.)

Thus, section 1298 requires that if an agent (such as MM) was to become a part of any arbitration agreement between itself and the principals to the transaction (such as the Westras), it must "indicate its assent" by initialing the provision. As MM did not do so, and did not even sign the purchase agreement as a whole, it could not legally be a party to the arbitration provision under section 1298. Nevertheless, we would point out that at least one court has held that section 1298 is preempted by federal law, the United States Arbitration Act. (See *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, 583 [11 Cal.Rptr.3d 787].) As a result, section 1298 and its requirements would appear to be beside the point.

The Westras also cite and rely on a decision from Division Three of this appellate district, *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83 [80 Cal.Rptr.2d 147] (*Hock*), which arose from a somewhat different problem in an arbitration provision contained in a similar MM purchase agreement. In *Hock*, disputes arose between the buyers and sellers of real property, and between sellers and MM, the broker who had also, as here, represented both the buyers and the sellers. (*Hock, supra,* at p. 85.) An arbitration provision of the purchase agreement provided that " 'Buyer, Seller and Agent agree' " that certain controversies would be settled by final, binding arbitration. (*Id.* at p. 86, italics omitted.) Based on this clause, MM sought to compel arbitration of all claims against it. (*Ibid.*) However, only the buyers had initialed in the spaces provided after the arbitration provision, to indicate acceptance. The sellers never initialed the provision in the final contract or in any of the various counteroffers. (*Ibid.*) Therefore, the arbitration provision never became operative. The Court of Appeal concluded that "although the buyers *offered* to include the arbitration provision as part of the purchase agreement, the sellers did not accept that offer. . . . Thus, 'Buyer, Seller and Agent' did not agree to submit controversies to binding arbitration, as the arbitration clause require[d]." (*Id.* at p. 89.)

*Hock* distinguished and disagreed with the Second District authority urged here by MM, *Grubb & Ellis Co. v. Bello* (1993) 19 Cal.App.4th 231 [23 Cal.Rptr.2d 281] (*Bello*), which had suggested in dicta that an agreement to arbitrate disputes need not be a mutual agreement. Instead, *Hock* stressed that a contract to arbitrate disputes must generally be mutual, because "if there were no mutuality of remedy requirement, the seller—which is usually the offeree in the real estate sales context—would have absolutely no incentive to initial the arbitration provision and thereby bind itself to arbitrate disputes." (*Hock, supra,* 68 Cal.App.4th at p. 91, fn. 6.)

However, section 1298 and the case law decided under it, such as *Hock* and *Bello*, are not pertinent to our analysis for another reason. MM does not contend it is a signatory party to the arbitration provision or the purchase agreement. Rather, MM claims it was entitled to enforce the agreement as an "agent" of the actual signatories, the Westras and Skyline.

■ There are exceptions to the general rule that a nonsignatory to an agreement cannot be compelled to arbitrate and cannot invoke an agreement to arbitrate, without being a party to the arbitration agreement. (See *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245 [54 Cal.Rptr.2d 628] (*Kaiser Foundation*).) A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory. (*Id.* at pp. 242, 245.)

MM relies on cases such as *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999 [119 Cal.Rptr. 130], in which Leona Berman maintained an account with a securities broker, Dean Witter & Co. (Witter). Her husband, Jack Berman, purchased on margin certain future contracts for Japanese yen for her account. The order was handled by a broker employed by Witter named Norman Sobel. When they suffered a financial loss on the future contracts, Jack and Leona Berman filed a complaint against Witter and Sobel, who in turn petitioned to compel arbitration under a written customer agreement between Witter and Leona Berman. The court compelled arbitration of the claims by Jack Berman and against Sobel, even though they were not signatories of the customer agreement: "Sobel and Jack Berman though not signatories to the agreement were both acting as agents for the signatories. Sobel is as entitled to the benefit of arbitration as is his principal Witter. [Citations.] Jack on the other hand is not entitled to any greater right than his principal Leona." (*Id.* at p. 1004.)

Similarly, in *Kaiser Foundation,* the court observed that a "preexisting relationship" between a signatory party and another person or entity will allow enforcement of an arbitration agreement as to the nonsignatory. (*Kaiser Foundation, supra,* 47 Cal.App.4th at p. 242; accord, *Norcal Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 76 [100 Cal.Rptr.2d 683] (*Norcal*) ["The common thread of all the above cases is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement."].)

■ MM was acting as an agent for both parties to the purchase agreement and its arbitration agreement, in a preexisting agency relationship. (See *Norcal, supra,* 84 Cal.App.4th at p. 76.) The language of the purchase agreement, as well as the arbitration provision itself, clearly states that the Westras, MM, and Skyline agreed to arbitrate disputes involving the subject matter of the purchase agreement: "Buyer, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." This language was thus binding on MM as well as the Westras, and MM as an agent is entitled to enforce the arbitration agreement, to which the Westras and Skyline had agreed. (See *Berman v. Dean Witter & Co., Inc., supra,* 44 Cal.App.3d at p. 1004; *Kaiser Foundation, supra,* 47 Cal.App.4th at p. 245.)

The Westras, however, claim the purchase agreement itself provides that no such relationship of agency existed, because it states: "Agent [i.e., MM] shall have no authority to bind either Buyer or Seller to any modification or amendment of this Agreement. . . . Buyer and Seller agree that their relationship with Agent is at arm's length and is neither confidential nor fiduciary in nature." We do not read this recital in the agreement to state that MM was not an agent of Skyline and/or the Westras. In fact, the agreement refers to MM as the "Agent" or "agent" of the other parties.[2] And, as MM stresses, the Westras had even *alleged* MM was an "agent" of Skyline, and the first amended complaint also contained the statement that MM was "a licensed real estate broker" that "acted as the real estate agent of Plaintiffs," and thus owed the Westras a fiduciary duty in this transaction. These allegations in the Westras' pleading constitute judicial admissions that MM was acting as the agent of the signatory parties. (See *Heater v. Southwood*

[2] The Westras attach significance to the fact that the word "Agent" is generally capitalized in the purchase agreement, where it refers to MM. We find no such significance in this capitalization, especially in light of the fact that although the purchase agreement defines MM as the "Agent" it also specifies that MM was acting "as agent" without capitalization.

*Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1079, fn. 10 [49 Cal.Rptr.2d 880].)

On this topic, we find guidance in an opinion authored by Justice Kaufman, *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1319 [231 Cal.Rptr. 315] (*Izzi*), in which the plaintiff, as here, had alleged that certain defendants who were nonsignatories to a purchase agreement were the agents of the other defendants who had signed the agreement, but contended the agents could not join in the arbitration: "Plaintiffs' attempt to avoid arbitration by arguing the arbitration clause cannot be applied to named defendants who were not signatory to the purchase agreement requires only cursory discussion. Defendants . . . all joined in the motion to compel arbitration and on appeal seek reversal of the order denying arbitration. They have thereby effectively waived any objection they might have asserted to arbitration of the dispute . . . ." (*Ibid.*) We note that the Westras' first amended complaint included agency allegations similar to those found in the complaint in *Izzi*; as in *Izzi*, the allegations of the complaint itself establish that MM was an agent of the other defendant, Skyline, and therefore MM was entitled to seek arbitration: "The argument that the arbitration clause cannot be enforced against the nonsignatory defendants is thus largely without substance." (*Ibid.*)

We can find no principled reason not to adopt and apply the rule of law announced in *Izzi* to the present case.

2. *The Claim by MM of Third Party Beneficiary Status Is Moot.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *Other Issues*

MM points out that considerations of judicial efficiency also support its position. MM contends it would be more efficient if the entire dispute, rather than just the claims against Skyline, were sent to arbitration. While this may be true, such a consideration is not dispositive, and in any event MM's contentions in this regard are moot, in light of our conclusion that MM is entitled to enforce the arbitration agreement.

 Finally, the Westras assert in their brief that we should overturn the trial court's order granting the motion to compel arbitration of their claims

---

[*]See footnote, *ante*, page 759.

against Skyline. They contend that it would be more efficient to send the entire dispute to litigation, rather than sending the claims against Skyline to a separate arbitration. This contention is likewise moot, in light of the conclusion we have reached. In any event, we do not have appellate jurisdiction over the trial court's order compelling arbitration of the claims against Skyline, which was not an appealable order, and was not the subject of any appeal or cross-appeal. "The right of appeal is statutory and a judgment or order is not appealable unless expressly made so by statute." (*State Farm Fire & Casualty v. Hardin* (1989) 211 Cal.App.3d 501, 505 [259 Cal.Rptr. 433] (*State Farm*).)

Section 1294, governing the appealability of arbitration orders, reads: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration. [¶] (b) An order dismissing a petition to confirm, correct or vacate an award. [¶] (c) An order vacating an award unless a rehearing in arbitration is ordered. [¶] (d) A judgment entered pursuant to [the California arbitration act]. [¶] (e) A special order after final judgment." The order as to Skyline does not fall into any of the categories listed in this statute.

"While an order denying a petition to compel arbitration is expressly made appealable by Code of Civil Procedure section 1294, subdivision (a), the statute fails to make an order compelling arbitration appealable. Accordingly, an order compelling arbitration is nonappealable." (*State Farm, supra,* 211 Cal.App.3d at p. 506.) "The rationale behind the rule making an order compelling arbitration nonappealable is that inasmuch as the order does not resolve all of the issues in controversy, to permit an appeal would delay and defeat the purposes of the arbitration statute." (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 [133 Cal.Rptr. 775].) An "order compelling arbitration is interlocutory in nature and works no hardship on the litigant because the party who objects to arbitration may win at the arbitration hearing, and if he does not, the issue is reviewable on appeal from the judgment of confirmation." (*State Farm, supra,* at p. 506.)

The Westras suggest that we could now exercise appellate jurisdiction over the order in favor of Skyline as an "intermediate" order under section 1294.2.[3] They contend the Skyline order was "intertwined" with the order

---

[3] Section 1294.2 states that "[u]pon an appeal from any order or judgment under this title [governing arbitration], the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party."

denying arbitration as to MM. But the ancillary jurisdiction conferred by section 1294.2 simply ensures that the appellate court can effectuate its ruling on an arbitration order, by permitting review of any other trial court decision affecting that specific order. In this case, the two orders as to MM and Skyline are logically separate and not intermediate to each other. Because we do not have ancillary jurisdiction over the order as to Skyline under section 1294.2, we may assess the propriety of the trial court's denial of the motion to compel arbitration as to MM, without considering the merits of the order compelling arbitration as to Skyline.

The published cases interpreting section 1294.2 are consistent with this conclusion. In *Berman v. Renart Sportswear Corp.* (1963) 222 Cal.App.2d 385, 387–388 [35 Cal.Rptr. 218], after the trial court denied a petition to compel arbitration and a request for a stay of the judicial proceedings, the appellate court concluded it had jurisdiction to review the order denying the stay in conjunction with its review of the order denying arbitration. Obviously, the denial of the stay had to be reviewed if the appellate court decided to order arbitration; otherwise, the appellate court's determination on the motion to compel arbitration would have been ineffectual. In the present case by contrast, no order we render on the legality of arbitration as to Skyline is directly affected by the legality of arbitration as to MM, and vice versa.

Similarly, in *Merrick v. Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 220 [181 Cal.Rptr. 530], the appellate court held it had no jurisdiction to review a ruling sustaining a demurrer in connection with an appeal from an order denying a petition to compel arbitration. The court found that the demurrer only concerned the merits of the underlying action and, as in the present case, did not affect the order denying the petition to compel arbitration which has been appealed from. (See *ibid.*)

Not only do we lack appellate jurisdiction as to Skyline, but perhaps just as critically, Skyline is not represented in this appeal. Very troubling questions of due process would be implicated if we were to overturn the order in favor of Skyline without affording it an opportunity to participate in the appeal and brief the relevant issues.

## III. *DISPOSITION*

The order denying the petition to compel arbitration filed by MM is reversed. The matter is remanded to the trial court, with instructions to grant the petition. Costs to MM.

Jones, P. J., and Simons, J., concurred.