Filed 1/28/25  Pich v. Laseraway CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HEATHER PICH,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>LASERAWAY, LLC, et al.,<br><br>    Defendants and Appellants. | B331219<br><br>(Los Angeles County Super. Ct. No. 23STCV01082) |

APPEAL from an order of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge. Affirmed.

Epstein Becker & Green, Michael S. Kun and Kevin D. Sullivan for Defendants and Appellants.

Yoffe & Cooper, Alexander Yoffe; Rosen Saba, Ryan D. Saba and Michael Forman for Plaintiff and Respondent.

## INTRODUCTION

Heather Pich filed a putative class action against her former employers, LaserAway, LLC, and LaserAway Medical Group, Inc. (collectively, LaserAway), alleging various wage and hour claims under the Labor Code arising out of her employment.[1] In response, LaserAway moved to compel arbitration, strike the class claims, dismiss the tenth cause of action for penalties under the Private Attorneys General Act (PAGA), and dismiss or stay the litigation. The trial court denied the motion on the ground that LaserAway failed to prove the existence of an agreement between the parties to arbitrate. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

LaserAway hired Pich in May 2021. Pich electronically signed several employment related documents using LaserAway's computerized onboarding process, including one entitled Mutual Agreement to Arbitrate Employment Related Disputes (the agreement).

The agreement provides, in relevant part that it "is made and entered into by and between Heather Pich and LaserAway (the 'Company')." It further provides: "The Company and I understand and agree that we will arbitrate disputes and claims under this Agreement instead of a court trial before a judge and/or a jury. The Company and I understand and agree that, by signing this Agreement, we are expressly waiving any and all rights to a trial before a judge and/or a jury regarding any

---

1       For purposes of the motion to compel arbitration, LaserAway does not contest Pich's allegation that she was jointly employed by both companies.

disputes and claims which we now have or which we may in the future have that are subject to arbitration under this Agreement." The last page of the agreement includes an "Acknowledgement" in capital letters, which states in relevant part: "The parties acknowledge and agree that each has read this agreement carefully and understand that by signing it, each is waiving all rights to a trial or hearing before a judge or jury of any and all disputes and claims subject to arbitration under this agreement." Following the acknowledgement is a checkbox next to the statement "I understand that checking this box constitutes a legal signature confirming that I, Heather Pich, acknowledge and agree to the above Mutual Agreement to Arbitrate Employment Related Disputes." The box is checked.

Pich stopped working for LaserAway in July 2022. In 2023, Pich filed a putative class action complaint against LaserAway for: alleged violations of the Labor Code; violation of the Business and Professions Code; and civil penalties under PAGA. In response, LaserAway moved to compel arbitration, strike class claims, dismiss the PAGA cause of action, and stay or dismiss the action. Pich opposed the motion, arguing in part that an enforceable agreement was not formed between the parties because neither LaserAway nor Pich signed the agreement.

Following a hearing, the trial court issued a comprehensive order denying the motion on the ground that LaserAway failed to prove the existence of an agreement to arbitrate. The trial court's conclusion rested on two independent grounds: (1) LaserAway did not sign the agreement despite language in the agreement indicating signatures from both parties are required; and (2) LaserAway did not meet its burden of proving Pich assented to the arbitration agreement.

3

LaserAway timely appealed the order denying its motion.

## DISCUSSION

### A.   Governing Law and Standard of Review

The Federal Arbitration Act (FAA) provides arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." (9 U.S.C. § 2.)[2] "'[E]ven when the [FAA] applies, [however], interpretation of the arbitration agreement is governed by state law principles . . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . . "'"'" (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 177.) Although federal and California law favor enforcement of valid arbitration agreements, "'"[t]here is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate."'" (*Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 701.)

"[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)

---

2      The agreement provides that the arbitration and the agreement shall be governed by the FAA.

4

The issue we decide on appeal—i.e., whether LaserAway was required to sign the agreement to demonstrate the existence of a valid arbitration agreement—presents a contract interpretation question. "When, as here, no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration." (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204.)[3]

## B. LaserAway Did Not Prove the Existence of an Agreement to Arbitrate

As noted above, the same rules govern an arbitration agreement as any other contract. "The existence of a contract under California law requires four essential elements: parties capable of contracting; their consent; a lawful object; and a sufficient cause or consideration." (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 21.)

It is undisputed LaserAway did not sign the agreement. LaserAway nevertheless contends its assent should be presumed because: it drafted the agreement; language in the agreement obligates LaserAway to its terms; and LaserAway presented the agreement to Pich upon hire. LaserAway is correct that the absence of the employer's signature is not always dispositive. But here, the plain language of the agreement requires LaserAway's

---

3      The parties submitted conflicting evidence regarding whether Pich signed the agreement. We do not reach this issue, because, as discussed in detail below, even if Pich signed the agreement, no enforceable agreement exists due to LaserAway's failure to sign.

signature to form an agreement to arbitrate, and none was ever provided.

The agreement's terms clearly state LaserAway's signature is necessary to form an agreement to arbitrate: "The Company and I understand and agree that, *by signing this Agreement*, we are expressly waiving any and all rights to a trial before a judge and/or a jury . . . ." (Italics added.) The signature requirement is repeated again under the "Acknowledgment" heading: "The parties acknowledge and agree that each has read this agreement carefully and understand that *by signing it*, each is waiving all rights to a trial or hearing before a judge or jury of any and all disputes and claims subject to arbitration under this agreement." (Italics added.) Because LaserAway did not sign the agreement per its unambiguous terms, the parties never formed an agreement to arbitrate.

The court in *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83 (*Marcus*) similarly held signatures are required to form an agreement to arbitrate when the language of the agreement imposes that requirement. In *Marcus*, the agreement stated in part: "'By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration . . . .'" (*Id*. at p. 86.) Although the buyers initialed the provision, the sellers did not. (*Ibid*.) The *Marcus* court thus concluded that "the contract contemplated that the arbitration of disputes provision would be effective only if both buyers and sellers assented to that provision by initialing it [and] [s]ince the sellers

6

did not initial that provision, it did not become effective." (*Id*. at p. 92.)[4]

The cases relied on by LaserAway, in which courts have enforced arbitration agreements that were not countersigned by the employer, are easily distinguishable. (See *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165 (*Serafin*); *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390; *Fuentes v. Empire Nissan, Inc.* (2023) 90 Cal.App.5th 919.) Critically, none of those cases involved arbitration agreements indicating a signature from both parties is necessary to form an agreement. For example, in *Serafin, supra,* 235 Cal.App.4th at p. 171, the agreement stated: "'[I]t is the policy of [the employer] that the disputed matter shall be submitted to binding arbitration under the Rules of the American Arbitration Association applicable to employment disputes. All employees will be required to sign an acknowledgement stating that they understand this policy and will comply with it.'" Because the agreement did not require the employer's signature, the *Serafin* court looked to the presence or absence of evidence of the employer's intent to be bound by the agreement. It then concluded the employer's intent to be bound by the agreement could be inferred because the agreement was drafted by the employer, the agreement was printed on the employer's letterhead, and the employer filed a motion to stay the litigation and compel arbitration. (*Id*. at pp. 176-177.) But here,

---

4    We are unpersuaded by LaserAway's argument that *Marcus* is inapplicable because the agreement in that case, unlike here, included a signature line for the sellers. Construing the agreement as a whole, the lack of a signature line for LaserAway does not negate the unambiguous language in the agreement requiring signatures by both parties.

we cannot, as LaserAway urges us to do, presume it assented to the agreement when the terms of the agreement specifically call for signatures from both parties and LaserAway did not sign it.[5]

Accordingly, we conclude the trial court did not err by finding LaserAway failed to prove the existence of an agreement to arbitrate, and denying LaserAway's motion to compel arbitration on that basis.

## DISPOSITION

The order is affirmed. Pich is awarded her costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.

---

5    We reject LaserAway's argument that it signed the agreement because its "name is printed on the [a]greement and [the agreement is] offered to all newly hired employees through a secure, online portal bearing its name." Nothing in the agreement indicates that LaserAway's name in the agreement equates to a signature. If that were the case, signatures would hardly—if ever—be required because the parties to an agreement are generally defined in its terms.

8