Filed 12/5/22  Turpin v. Learning With A Difference CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| KRISTINA TURPIN, | B314732 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV07398) |
| v. | |
| LEARNING WITH A DIFFERENCE, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Christopher B. Cato, Matthew G. Kleiner, and Casey Shaw for Defendant and Appellant.

Magnanimo Dean Law and Lauren A. Dean for Plaintiff and Respondent.

## INTRODUCTION

Appellant Learning With a Difference (LWD) owns and operates Westmark School. LWD appeals from the trial court's denial of its motion to compel arbitration of claims brought against it by its former employee, respondent Kristina Turpin. For each year LWD employed Turpin, she was presented with two agreements: an Employment Agreement and a Mutual Agreement to Arbitrate Claims ("Arbitration Agreement"). Each Employment Agreement contained an arbitration clause stating that the parties agreed to arbitrate their disputes pursuant to the Arbitration Agreement. Both the Employment Agreement and the Arbitration Agreement contained spaces for each party to sign.

From 2015 through 2018, Turpin signed both agreements. However, in 2019, she signed only the Employment Agreement, despite LWD's repeated requests that she sign the Arbitration Agreement as well. In 2020, Turpin again signed only her Employment Agreement, and additionally blacked out all references in the agreement to the Arbitration Agreement. Shortly thereafter, LWD fired her.

After Turpin sued LWD for employment-related claims, LWD moved to compel arbitration, arguing that both the arbitration clause in the 2019 Employment Agreement and the 2018 Arbitration Agreement required Turpin to arbitrate. The trial court denied LWD's motion, finding that the 2019 Employment Agreement referencing the

2

Arbitration Agreement was insufficient to bind either party to arbitration in the absence of the signatures contemplated by the Arbitration Agreement. The court further found that the 2018 Arbitration Agreement was unenforceable because it had been superseded by the 2019 agreements. LWD contends the court erred in these findings. We conclude the trial court ruled correctly and therefore affirm.

**STATEMENT OF RELEVANT FACTS**

### A. *Turpin Signs Employment Agreements*

LWD hired Turpin in 2015. Before each school year in the years 2015 through 2018, Turpin and LWD signed two agreements: an Employment Agreement and an Arbitration Agreement, each of which had separate signature lines for the parties. Beginning in 2016, paragraph 15 of each Employment Agreement, entitled "Agreement to Arbitrate," provided: "Both Employee and the School mutually and voluntarily agree that any dispute arising out of or in any way related to Employee's employment with the School will be decided exclusively by final and binding arbitration pursuant to the Arbitration Agreement attached to this Employee Agreement as Exhibit 'A.'"[1] Each of these Employment Agreements also contained an integration clause at paragraph 22, entitled "Entire Agreement," which provided: "This Agreement supersedes any and all

---

[1] The 2015 agreement contained a substantively similar clause.

agreements, either oral or in writing, between the parties and, along with the Arbitration Agreement attached as Exhibit 'A' contains all the covenants and agreements between the Parties with respect to the employment of the Employee by the School." Similarly, each iteration of the Arbitration Agreement stated it was "the complete Agreement between School and Employee regarding the arbitration of Arbitral Claims," that it "supersede[d] any prior or contemporaneous oral or written understanding on the subject," and asserted that no party was "relying on any representations, oral or written, on the subjects of the effect, enforceability or meaning of this [Arbitration] Agreement, except as specifically set forth herein." Each Arbitration Agreement also provided that it would survive the termination of employment, and applied to all claims that arose or were asserted during or after the termination of employment.

In 2019, Turpin again signed an Employment Agreement containing paragraphs 15 ("Agreement to Arbitrate") and 22 ("Entire Agreement") identical to those in previous years. However, Turpin did not sign the attached Arbitration Agreement, despite the repeated urging of LWD's Chief Financial Officer (CFO) to do so. Turpin informed LWD she had not signed the agreement because "issues surrounding my duties and schedule seem to be in flux." She asked LWD's CFO multiple times whether signing the agreement was a condition of her employment

4

but received no answer.  It is undisputed that Turpin worked and was paid under the 2019 Employment Agreement.[2]

In 2020, Turpin was provided an employment agreement substantively similar to her previous agreements. LWD had already electronically signed the agreement and requested Turpin do the same.  Turpin instead printed a physical copy, blacked out the "Agreement to Arbitrate" paragraph along with other references to the Arbitration Agreement, and signed physically.  She again did not sign the attached Arbitration Agreement.  Nothing in the record suggests LWD ever expressly agreed to Turpin's changes, though Turpin claimed she was paid under the new contract, which commenced August 13, 2020.  On August 21, 2020, LWD sent Turpin a letter serving as "notice of the separation of [her] employment effective August 31, 2020," stating she would be paid her regular wages through that date.

---

[2]     The Employment Agreement referred to the agreement to arbitrate as "voluntar[y]," and LWD does not contend that Turpin's assent to arbitration was a condition of her employment. In its briefing, LWD notes that its CFO "never told [Turpin] that [signing the Arbitration Agreement] was a condition of her employment, even after Ms. Turpin specifically asked him that question."

## B. *LWD Moves to Compel Arbitration of Turpin's Complaint*

In February 2021, Turpin sued LWD, alleging numerous causes of action relating to her termination and claiming LWD discriminated against her after she informed the school she was pregnant. In July 2021, LWD moved to compel arbitration. LWD contended that Turpin signed four Employment and Arbitration Agreements from 2015 to 2018, thereby agreeing to arbitrate all disputes; that although Turpin did not sign the 2019 Arbitration Agreement, by signing the 2019 Employment Agreement Turpin agreed to arbitrate all disputes pursuant to the 2019 Arbitration Agreement; and that LWD did not agree with Turpin's modification of the 2020 Employment Agreement, rendering that agreement ineffective. LWD thus contended Turpin was bound to arbitrate by both the 2018 and 2019 Employment and Arbitration Agreements. Turpin disagreed, arguing that the 2020 Employment Agreement was the operative contract and that, in any case, signing the 2019 Employment Agreement did not bind her to arbitrate under the unsigned 2019 Arbitration Agreement.

In August 2021, the court denied LWD's motion to compel. Citing the fact that the Arbitration Agreement was attached to the Employment Agreement as a separate document, that the Arbitration Agreement contained an integration clause, and that LWD repeatedly urged Turpin to sign the Arbitration Agreement, the court rejected LWD's contention that Turpin's signature on the 2019 Employment

6

Agreement alone required Turpin to arbitrate.  It found clear that "the parties would not be bound to arbitration unless both of them signed the separate agreement to arbitrate," and that the "Agreement to Arbitrate" paragraph in the Employment Agreement referencing the Arbitration Agreement was "insufficient to bind either party to arbitration given the evidence of their intent to have the separate arbitration agreement be the operative contract regarding arbitration."  Pointing to paragraph 22 of the 2019 Employment Agreement (the Entire Agreement paragraph), the court also rejected LWD's argument that Turpin was required to arbitrate under the 2018 Arbitration Agreement. It found that the agreement was superseded by the 2019 Employment Agreement, that there was "no indication that the parties intended to be bound by old arbitration agreements despite signing renewed employment contracts each year," and that the "inclusion of a new arbitration agreement attached to each yearly employment contract suggests that the parties did not intend for one arbitration agreement to carry through to subsequent school years."[3] LWD timely appealed.

## DISCUSSION

"""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.

---

[3] The court found the 2020 Employment Agreement was "not properly execute[d]."

7

[Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]"'" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.) Citing *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83, LWD contends that we should review the court's factual determinations de novo.[4] We need not decide which standard of review applies to the court's factual determinations because we find that under either standard of review, the court did not err in finding the parties did not intend to be bound by the Arbitration Agreement unless it was signed.

### A. *The Court Did Not Err in Finding the Parties Did Not Agree to Arbitrate*

"'In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate."'" (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967.) "'An essential element of any contract is the consent of the parties, or mutual assent.'"

---

[4] (*Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co., supra,* 68 Cal.App.4th at 89 ["We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate. [Citations.] Since the extrinsic evidence in this case consists entirely of written declarations, we review this issue de novo"].)

(*Ibid.*) "The parties' mutual intent is to be ascertained solely from the contract that is reduced to writing, if possible." (*Ibid.*)

Citing the fact that the Arbitration Agreement was attached to the Employment Agreement as a separate document requiring each party's signature, that the Arbitration Agreement contained an integration clause, and that LWD repeatedly urged Turpin to sign the Arbitration Agreement, the trial court found paragraph 15 "insufficient to bind either party to arbitration given the evidence of their intent to have the separate arbitration agreement be the operative contract regarding arbitration." We agree the parties did not intend to be required to arbitrate unless the Arbitration Agreement was signed. Paragraph 15 of the Employment Agreement provided that the parties agreed to arbitrate all disputes "pursuant to" the Arbitration Agreement. By agreeing to act "pursuant to" an agreement that required the parties' signatures, Turpin and LWD necessarily agreed that they would not be bound by that agreement were it not signed. We note also that if Turpin's signature on the Employment Agreement sufficiently bound her to arbitrate under the Arbitration Agreement, the signature lines in the Arbitration Agreement would be superfluous. In interpreting contracts, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.)

9

We find instructive *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 (*Mitri*), in which the employer also appealed a trial court's denial of its motion to compel arbitration. (*Id.* at 1166.) There, employees acknowledged in writing receiving an employee handbook containing a section entitled "Arbitration Agreement" that provided: "'Any dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration. As a condition of employment, all employees are required to sign an arbitration agreement.'" (*Id.* at 1167.) The appellate court found that although the employees signed acknowledgments that they had "'read and understood'" the provisions of the handbook (including the unequivocal agreement to arbitrate) and proceeded to work for the employer, the absence of the employees' signatures on a separate arbitration agreement referenced in the employee handbook "completely undermine[d] any argument by defendants the provision in the handbook itself was intended to constitute an arbitration agreement between [employer] and its employees." (*Id.* at 1169, 1170-1171.) The appellate court, finding the employer's arguments "wholly without factual or legal merit," affirmed the trial court's refusal to compel arbitration. (*Id.* at 1166, 1173.)

Here, as in *Mitri*, there is no signed 2019 Arbitration Agreement. Indeed, it is undisputed that Turpin refused to sign it. Moreover, unlike the employees in *Mitri,* who signed acknowledgments that agreeing to arbitration was a condition of their employment, no such requirement was

10

communicated to Turpin.  On the contrary, LWD's CFO studiously avoided communicating such a requirement (despite being asked), and it is undisputed that Turpin worked and was paid for the 2019-2020 term.  The instant case thus presents an even more compelling one for denying arbitration.

Further support comes from this court's decision in *Romo v. Y-3 Holdings Inc.* (2001) 87 Cal.App.4th 1153. There, the employee signed an acknowledgment that she had read and understood the contents of an employee handbook containing a provision entitled "'Mutual Agreement to Arbitrate Claims,'" setting forth the parties' "'consent to the resolution by arbitration of all claims or controversies . . . .'" (*Id.* at 1155.)  The provision itself contained lines for the dates and signatures of the employer and employee, neither of which was signed.  (*Id.* at 1156.)  Upholding the trial court's refusal to compel arbitration, we concluded that "'read as a whole, the [arbitration agreement within the employee handbook] in this case contemplated that the arbitration of disputes provision would be effective only if both [parties] assented to that [particular] provision.  Since the [parties] did not assent to this [particular] provision[,] the parties did not agree to binding arbitration.'" (*Id.* at 1160, quoting *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co., supra,* 68 Cal.App.4th at 91 [agreement to arbitrate provision contained in sales agreement did not become effective, where provision called for initials of buyers and sellers, and sellers had not initialed

11

(*id.* at 89)].)  Again, the case for denying arbitration here is even more compelling, as the Employment Agreement referenced a separately attached Arbitration Agreement which, like the provision in *Romo*, called for -- but did not contain -- separate signatures of the parties.

LWD argues the court's finding was "unsupported by the evidence," contending: (1) paragraph 15 was an "unambiguous promise" to arbitrate; (2) the trial court's interpretation of the agreements rendered paragraph 15 surplusage; (3) the Employment Agreement and Arbitration Agreement should be treated as a single agreement; and (4) Turpin's actions in blacking out paragraph 15 in her 2020 agreement demonstrated her awareness that failure to do the same in 2019 bound her to arbitrate.  We reject LWD's arguments.

First, paragraph 15 of the Employment Agreement reflected an unambiguous agreement to arbitrate "pursuant to" the Arbitration Agreement.  Because the Arbitration Agreement required the parties' signatures, paragraph 15 necessarily required arbitration only if the corresponding agreement was signed.[5]  Second, determining that the

---

[5]    The parties' own conduct left little doubt that they both considered a signed Arbitration Agreement necessary to effectuate an agreement to arbitrate.  Turpin steadfastly refused to sign the Arbitration Agreement, despite repeated urging.  And LWD's CFO repeatedly sought to secure her signature, while refusing to declare her assent a condition of her employment.  As noted, she worked throughout the 2019-2020 school year and was paid.

Employment Agreement's reference to the Arbitration Agreement implied a signed agreement -- as contemplated by the latter -- did not render the paragraph surplusage; arbitration clauses commonly proclaim themselves ineffective unless signed or initialed. (See *Mitri, supra*, 157 Cal.App.4th at 1170, 1171 [employee handbook's statement that disputes "'will be settled by binding arbitration'" insufficient to constitute agreement to arbitrate when handbook also made clear parties would be required to sign binding arbitration agreement].)[6] Third, LWD's urging that we consider the Employment and Arbitration Agreements together changes nothing -- a single agreement is no less capable of providing that an arbitration clause contained therein is invalid unless the parties expressly sign the clause.[7] Finally, while Turpin's editing of the 2020

---

[6] LWD fails adequately to explain why its interpretation would not render the Arbitration Agreement's signature lines surplusage. While it suggests the execution of annual arbitration agreements was required "to memorialize any updates or changes in the law," it identifies no such updates or changes, and our review of the 2016 to 2019 Arbitration Agreements in the record reveals them to be substantively identical.

[7] LWD's citation to *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667 is thus unavailing. There, a plaintiff argued that because her employment agreement did not contain an arbitration clause but did contain an integration clause, she was not bound by arbitration clauses in other agreements she had signed contemporaneously. (*Id.* at 1675-1676.) The Court of Appeal rejected this argument, holding that the agreements were
*(Fn. is continued on the next page.)*

agreement expressed with even greater vehemence her refusal to voluntarily consent to arbitration, it did not detract from the significance of her refusing to sign the 2019 Arbitration Agreement.[8]

---

required to be taken together. (*Ibid.*) Here, Turpin did not sign the Arbitration Agreement, contemporaneously or otherwise.

[8] LWD additionally argues that under the Federal Arbitration Act, a party may be bound by an unsigned arbitration agreement, citing *Valero Refining, Inc. v. M/T Lauberhorn* (5th Cir. 1987) 813 F.2d 60 and *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.* (2d Cir. 1987) 815 F.2d 840. Both *Valero* and *Genesco* are inapposite because in both cases, evidence of the parties' conduct made clear that they had agreed to the unsigned contract containing the arbitration clause. (*Valero, supra*, at 64 [sufficient evidence supported district court's determination that parties had agreed to unsigned agreement containing arbitration clause]; *Genesco, supra*, at 846 [lack of signature on some of parties' agreements immaterial when parties' longstanding relationship demonstrated they had agreed to contract containing arbitration clause].) Here, there is no evidence Turpin agreed to the Arbitration Agreement and, as previously discussed, the Employment Agreement required the parties to arbitrate only "pursuant to" an Arbitration Agreement which called for -- but did not contain -- both parties' signatures.

We also find unconvincing LWD's citation to our decision in *Martinez v. BaronHR, Inc., supra,* 51 Cal.App.5th 962. There, the plaintiff signed directly under an acknowledgment that he had read the terms of the arbitration agreement, agreed to be bound by it, and understood that after he signed, he had "no right to pursue claims against the Company in court and before a jury, but only through the arbitration process." (*Id.* at 965, capitalization removed.) Additionally, "three separate terms of the agreement acknowledge[d] in explicit and unmistakable
*(Fn. is continued on the next page.)*

**B.     *The Prior Arbitration Agreements Are Unenforceable***

In rejecting LWD's argument that the parties' 2018 Arbitration Agreement was still enforceable, the trial court concluded that the parties intended the 2019 agreements to supersede any prior agreements, citing paragraph 22 of the 2019 Employment Agreement, which provided: "'This Agreement supersedes any and all agreements, either oral or in writing, between the parties and, along with the Arbitration Agreement attached as Exhibit 'A' contains all the covenants and agreements between the Parties with respect to the employment of the Employee by the School.'"

LWD contends this determination was erroneous because Turpin had signed enforceable arbitration agreements provided to her in previous years of employment, and those agreements stated they would continue in full force and effect throughout Turpin's employment and would survive her termination.  LWD urges us to "view each school year's Employment Agreement and Arbitration Agreement as a distinct, one-year agreement to arbitrate, then determine whether arbitral claims occurred in school years when a valid arbitration agreement existed."  We decline

---

language the parties' mutual intent to arbitrate all disputes." (*Id.* at 967.)  We thus found it immaterial that the plaintiff had not initialed a jury-waiver provision within the agreement. (*Id.* at 969.)  Here, by contrast, Turpin never signed the Arbitration Agreement, and her only agreement to arbitration in the Employment Agreement was pursuant to an Arbitration Agreement that required both parties' signatures.

LWD's invitation, as it contravenes the plain language of the parties' agreement.

The 2019 Employment Agreement professed to be the entire agreement between the parties, superseding all other agreements "with respect to the employment of the Employee by the School." This agreement provided also that "pursuant to" the Arbitration Agreement requiring the parties' signatures, they would be required to arbitrate "any dispute arising out of or in any way related to Employee's employment with the School . . . ." Neither the integration nor arbitration clauses limited themselves to Turpin's employment during, or disputes arising out of, the 2019-2020 school year, and neither clause indicated any intent to be bound by the previous Arbitration Agreements for claims arising during the school years in which they were signed.[9] Therefore, it does not matter when Turpin's claims arose, only when she brought them. Because she brought them after signing the 2019 agreement, that agreement governs.[10] (See, e.g., *Grey v. American Management Services* (2012) 204 Cal.App.4th 803, 807-808 [court erred in compelling

---

[9]     In fact, as the trial court noted, the inclusion each year of a new Arbitration Agreement indicated that the parties intended to renegotiate dispute resolution procedures with each new set of agreements.

[10]     LWD contends the 2020 Employment Agreement is a nullity because it did not agree to the modifications that Turpin unilaterally imposed. Turpin does not meaningfully contend otherwise. We agree, and do not consider the 2020 agreement.

arbitration based on earlier integrated agreement with broad arbitration clause, when earlier agreement was superseded by later integrated agreement with narrower arbitration clause].)

LWD complains that interpreting the integration clause to provide that the 2019 Employment Agreement superseded the previous agreements would be illogical. It argues that such an interpretation would prevent Turpin from pursuing claims that LWD wrongly increased her responsibilities over the years, or hypothetically, failed to pay adequate salaries in previous years. LWD presents no authority for this puzzling claim, and we reject it. That parties subsequently enter an integrated agreement professing to be the entire agreement between them does not eliminate claims already accrued under previous agreements. (See, e.g., *Republic Truck Sales Corp. v. Peak* (1924) 194 Cal. 492, 512 [integration clause in later contract of sale did not extinguish obligations arising from already consummated transactions arising from previous contracts of sale].)[11]

---

[11] LWD also contends that because specific provisions control over general provisions of an agreement, we should enforce the integration clause of the 2018 Arbitration Agreement over the integration clause of the 2019 Employment Agreement, as the Arbitration Agreement more specifically addressed arbitration. Even assuming the 2018 Arbitration Agreement's integration clause was more specific, LWD provides no authority requiring a court to prioritize a more specific, *superseded* clause over a more general, operative clause.

## DISPOSITION

The court's order is affirmed.  Respondent is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.

18