Filed 1/5/26 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| SIERRA PACIFIC INDUSTRIES WAGE AND HOUR CASES. | C099436<br><br>(JCCP No. 5235, Shasta County Super. Ct. No. 191133, Sacramento County Super. Ct. No. 34202100306921CUOEGDS)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the published opinion filed herein on December 9, 2025, be modified as follows:

1.  At page 6, in the first full paragraph, modify the third sentence that reads, "On January 31, 2022, the trial court entered an order imposing monetary sanctions of $4,210 against Sierra Pacific for knowingly violating the February 2020 order by

1

failing to provide *Belaire-West* notices to all non-exempt employees at the Red Bluff facilities" to omit the word "knowingly" so that the sentence reads:

> On January 31, 2022, the trial court entered an order imposing monetary sanctions of $4,210 against Sierra Pacific for violating the February 2020 order by failing to provide *Belaire-West* notices to all non-exempt employees at the Red Bluff facilities.

There is no change in the judgment. The petition for rehearing is denied.

BY THE COURT:

/S/

_____

EARL, P. J.


/S/

_____

ROBIE, J.


/S/

_____

RENNER, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| SIERRA PACIFIC INDUSTRIES WAGE AND HOUR CASES. | C099436<br><br>(JCCP No. 5235, Shasta County Super. Ct. No. 191133, Sacramento County Super. Ct. No. 34202100306921CUOEGDS) |

APPEAL from a judgment of the Superior Court of Shasta County, Tamara L. Wood, Judge.  Affirmed in part and dismissed in part.

Downey Brand, William R. Warne, Cassandra M. Ferrannini, Daria A. Gossett; Morgan, Lewis & Bockius, Thomas M. Peterson, Kathryn T. McGuigan, and Joseph Bias for Defendant and Appellant Sierra Pacific Industries.

Haines Law Group, Paul K. Haines, Alexandra McIntosh; Pine Tillett, Norman Pine and Scott Tillett for Plaintiffs and Respondents Quinton McDonald, Gary W. Dunehew, and Robert L. Sherrill.

Plaintiff Quinton McDonald (McDonald), a former employee of defendant Sierra Pacific Industries (Sierra Pacific), brought a class action for wage and hour violations against Sierra Pacific in October 2018.  Sierra Pacific defended the action in the trial

1

court for years, remaining silent on the subject of arbitration and refusing to produce arbitration agreements signed by putative class members, despite being ordered to do so.

Eight plaintiff classes were certified in November 2022. In the months that followed, Sierra Pacific produced more than 3,000 signed arbitration agreements. Sierra Pacific then immediately moved to compel arbitration. McDonald, now joined by plaintiffs Gary W. Dunehew and Robert L. Sherrill (collectively, plaintiffs) opposed the motion and moved for evidentiary and issue sanctions for failure to timely produce the arbitration agreements. The trial court denied Sierra Pacific's motion to compel arbitration based on waiver, and granted plaintiffs' motion for evidentiary and issue sanctions, precluding Sierra Pacific from presenting evidence of the arbitration agreements or arguing that class members had signed such agreements. Sierra Pacific appeals.

We will affirm the order denying the motion to compel arbitration and dismiss the appeal from the order granting the motion for evidentiary and issue sanctions.

## I. BACKGROUND

Sierra Pacific manufactures lumber and operates wood processing facilities throughout California. McDonald worked as an hourly, nonexempt crew member at a Sierra Pacific sawmill from June 2015 through September 2018.

Many of Sierra Pacific's nonexempt employees had signed arbitration agreements. There are two forms of agreement: one dated 2016, and another dated 2022. Both agreements preclude class actions and require arbitration of all disputes arising out of the employment relationship.[1] Neither McDonald nor any of the other named plaintiffs signed an arbitration agreement.

---

[1] The 2016 agreement excludes representative actions under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

*A.*     *Pleadings*

McDonald filed a class action complaint against Sierra Pacific on October 19, 2018.  The complaint alleges eight causes of action for wage and hour violations, and a related cause of action for violations of the unfair competition law, on behalf of eight putative classes of present and former employees.  (Lab. Code, §§ 201-204, 221-223, 226, 226.7, 510, 512, 516, 558, 1182.12, 1194, 1194.2, 1197, 2802, 2804; Bus. & Prof. Code, § 17200 et seq.)  The complaint does not exclude employees who signed arbitration agreements from any of the eight classes.

Sierra Pacific answered the complaint with a general denial and affirmative defenses.  Those defenses did not include arbitration.

McDonald filed a first amended complaint on February 25, 2019.[2]  Sierra Pacific answered the first amended complaint, adding arbitration as an affirmative defense.

Plaintiffs filed the operative second amended complaint on February 18, 2021.  Sierra Pacific answered the second amended complaint with a general denial and 24 affirmative defenses.  This time, arbitration was not listed as an affirmative defense.

*B.*     *Discovery and Discovery Sanctions*

McDonald propounded requests for production in December 2018.  Some of the requests sought documents and information concerning Sierra Pacific's dealings with other non-exempt employees in California.  For example, request for production No. 5 sought "any and all itemized wage statements (i.e. pay stubs)" for "current and former non-exempt employees in California during the relevant time period."[3]  (Capitalizations omitted.)  Other requests sought information concerning Sierra Pacific's policies and practices with respect to non-exempt employees in California.  As relevant here, request

---

[2] The first amended complaint added a PAGA cause of action.

[3] The "relevant time period" was defined as "the time period of October 19, 2014[,] to the present."

3

for production No. 15 sought production of "any and all documents that pertain to any arbitration agreements that applied or apply to [Sierra's Pacific's] non-exempt employees in California during the relevant time period." (Capitalizations omitted.)

Sierra Pacific objected to the requests on various grounds. Among other things, Sierra Pacific objected on the grounds that the requests were overbroad and sought "private, privileged and protected information of persons that are not a parties [*sic*] to this action."

McDonald filed a motion to compel further responses. The motion explained that McDonald sought documents and information about other non-exempt employees in anticipation of his motion for class certification and complained that Sierra Pacific had only produced his own personnel file and written policies for two of its 11 facilities in California (the Richfield and Red Bluff facilities). McDonald addressed request for production No. 15 in a separate statement in support of the motion, averring: "The requested arbitration agreements are relevant and necessary to determine the scope of this putative class action. Whether putative class members have entered into arbitration agreements with [Sierra Pacific] will potentially impact the scope of [McDonald's] classwide claims, and the size of the putative classes, depending on the content of such agreement."

Sierra Pacific opposed the motion, arguing the requests were "grossly overbroad," "insanely burdensome," and "entirely premature and irrelevant at this pre-certification stage." With respect to request for production No. 15, Sierra Pacific argued: "This request is unduly burdensome and overbroad and infringes on third-party employees' constitutional and financial rights to privacy."

The trial court granted McDonald's motion to compel by order dated February 3, 2020 (the February 2020 order). The trial court rejected Sierra Pacific's argument that discovery should be limited to the Richfield and Red Bluff facilities, noting Sierra Pacific "failed to seek a protective order, but rather unilaterally limited the scope of discovery."

4

Turning to Sierra Pacific's objection that the requests violated the privacy rights of third parties, the trial court found McDonald had a compelling need for the requested records, but access to them would be subject to reasonable restrictions. Specifically, the trial court directed Sierra Pacific to produce responsive records for all non-exempt employees at the Richfield and Red Bluff facilities, and representative samples of 20 percent of non-exempt employees at Sierra Pacific's other facilities around the state. The trial court further directed Sierra Pacific to send *Belaire-West* notices to non-exempt employees prior to the disclosure of such records.[4] With respect to request for production No. 15 (the request for arbitration agreements for non-exempt employees), the trial court ruled: "In the absence of a request for a protective order or any information related to confidentiality, the motion to compel is granted. Defendant is ordered to comply with this request."

Sierra Pacific provided supplemental responses to the requests for production on March 4, 2020. By way of supplemental response to request for production No. 15, Sierra Pacific wrote: "Defendant will produce all responsive non-privileged documents in its possession, custody, or control. Please refer to Bates Nos. SPI_McDonald001141-1143. Pursuant to the Court's February 3, 2020 Order on Plaintiff's Motion to Compel, [Sierra Pacific] will not produce the confidential identifying information of its third-party employees who executed arbitration agreements. There are 2,000 non-exempt employees at [Sierra Pacific's] facilities in California who executed arbitration agreements on the form provided at Bates Nos. SPI_McDonald001141-1142, on or after September 29, 2016." The referenced Bates numbers apparently consist of an unsigned copy of one of Sierra Pacific's form arbitration agreements. Neither McDonald nor any other plaintiff

---

[4] A *Belaire-West* notice is a written notice to putative class members informing them of the lawsuit and giving them an opportunity to opt out. (*Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 557-558 (*Belaire-West*).)

5

challenged the sufficiency of Sierra Pacific's supplemental response or production for several years.

The parties proceeded with extensive discovery in anticipation of plaintiffs' motion for class certification. That process was not without controversy. On January 31, 2022, the trial court entered an order imposing monetary sanctions of $4,210 against Sierra Pacific for knowingly violating the February 2020 order by failing to provide *Belaire-West* notices to all non-exempt employees at the Red Bluff facilities.[5] On February 14, 2022, the trial court entered an order imposing monetary sanctions of $9,525 on Sierra Pacific and its counsel for failing to produce other documents that were "clearly responsive" to the requests, such as signed declarations attaching timekeeping and other policies, also in violation of the February 2020 order. These were not the last of Sierra Pacific's discovery troubles.

C.  *Class Certification Motion and Stay of Proceedings*

Plaintiffs filed their motion for class certification in October 2021. The motion proposed eight classes. None of the proposed classes excluded non-exempt employees subject to arbitration.

Sierra Pacific opposed the motion for class certification, arguing *inter alia* that plaintiffs' claims were atypical because thousands of non-exempt employees that would otherwise be part of the putative classes had signed arbitration agreements (the signatory employees). Plaintiffs responded that they themselves had not signed arbitration agreements, and signatory employees could be removed from the class or classes post-certification. Plaintiffs also observed that Sierra Pacific had only produced a single arbitration agreement, with no identified signatory.

---

[5] The record indicates that Sierra Pacific gave the trial court reason to believe that there is only one facility in Red Bluff, but later took the position that there are two and unilaterally limited its responses to one of the two.

Briefing for the class certification motion was completed on April 29 or May 31, 2022.[6] The trial court stayed proceedings pending coordination with Judicial Council Coordination Proceeding No. 5235 on May 31, 2022. The stay was lifted for the limited purpose of hearing the class certification motion on October 21, 2022. The motion was granted on November 21, 2022, and the stay lifted entirely on December 16, 2022.

D. *Sierra Pacific Produces Arbitration Agreements for Signatory Employees*

Plaintiff Dunehew propounded requests for production of signed arbitration agreements for all non-exempt employees, in all eight classes, on December 20, 2022. Sierra Pacific produced more than 3,400 signed agreements between January 27 and March 8, 2023.

E. *Sierra Pacific's Motion to Compel Arbitration*

Sierra Pacific moved to compel arbitration against absent class members who signed arbitration agreements (the signatory employees) on March 10, 2023. Sierra Pacific argued the arbitration agreements were governed by the Federal Arbitration Act and covered each of the certified claims. Anticipating plaintiffs' waiver argument, Sierra Pacific argued the motion to compel arbitration was timely because plaintiffs had not signed arbitration agreements, and arbitration could not be compelled against the signatory employees before class certification. (*Sky Sports, Inc. v. Superior Court* (2011) 201 Cal.App.4th 1363, 1365 (*Sky Sports*) [employer did not waive right to enforce arbitration agreements by waiting until after class certification to bring motion to compel where class representative had not signed arbitration agreement].) Therefore, Sierra Pacific said, the motion was brought "at the first available opportunity," and plaintiffs would not be able to carry "the heavy burden necessary to establish waiver."

---

[6] Plaintiffs filed their reply in support of the motion on April 29, 2022, and defendants filed a sur-reply on May 31, 2022.

Plaintiffs opposed the motion. They argued Sierra Pacific waived its right to compel arbitration by engaging in years of litigation conduct inconsistent with an intent to arbitrate. They emphasized that Sierra Pacific refused to produce signed arbitration agreements for signatory employees, despite being ordered to do so. They also emphasized that Sierra Pacific participated in significant class discovery involving the signatory employees, without identifying them as such.

For example, plaintiffs explained that Sierra Pacific produced contact information for 1,388 putative class members in October 2020. Sierra Pacific produced timekeeping and payroll records for the same putative class members around the same time. But Sierra Pacific included information and records for 642 signatory employees in its responses, without suggesting they were bound to arbitrate. And because Sierra Pacific refused to identify signatory employees or produce signed arbitration agreements, plaintiffs had no way of knowing that nearly half of the putative class (more than 46 percent) was potentially subject to arbitration. Consequently, plaintiffs said they spent considerable time and money interviewing signatory employees and analyzing their payroll and timekeeping records.

Plaintiffs observed that Sierra Pacific sought discovery from signatory employees as well. Among other things, Sierra Pacific obtained declarations from 10 signatory employees, which were filed in opposition to their motion for class certification. And that was not all. Plaintiffs also presented evidence that Sierra Pacific gave declarants a written "[e]xplanation of [i]nterview," which described the litigation and asserted: "Because you are a non-exempt, hourly employee who works for Sierra Pacific in California, you may be one of the individuals on whose behalf [McDonald] is suing, and if [McDonald] in this lawsuit is ultimately successful, you may be entitled to a share in the recovery, if any." Sierra Pacific's "[e]xplanation of [i]nterview" made no mention of arbitration

8

Plaintiffs also presented evidence that Sierra Pacific propounded discovery concerning their communications with signatory employees and requested informal discovery conferences with the trial court to discuss that discovery. Last but not least, plaintiffs presented evidence that Sierra Pacific participated in two separate mediations in the hopes of achieving a settlement that would have included the signatory employees.

The trial court heard argument on the motion on May 1, 2023. The trial court issued a proposed statement of decision on June 30, 2023, to which Sierra Pacific filed objections. The trial court issued a final statement of decision on August 17, 2023 (the arbitration order). We will have more to say about the arbitration order in a moment.

F.      *Plaintiffs' Motion for Evidentiary and Issue Sanctions*

Plaintiffs moved for evidentiary and issue sanctions on March 15, 2023. Plaintiffs argued Sierra Pacific had previously violated the February 2020 order on two separate occasions and had now racked up a third violation by failing to produce signed arbitration agreements for the signatory employees for nearly three years, despite being ordered to do so. Plaintiffs presented evidence that Sierra Pacific had been actively engaged in discovery involving the signatory employees, which included: (1) producing contact information for 642 signatory employees (nearly half the putative class); (2) producing timekeeping and payroll records for signatory employees; and (3) interviewing, obtaining declarations from, and deposing signatory employees. Plaintiffs also presented evidence that Sierra Pacific told some of the signatory employees they might be entitled to participate in any class recovery and relied on their declarations and deposition testimony in opposing plaintiffs' motion for class certification. Plaintiffs also presented evidence that they had incurred substantial costs in connection with the signatory employees, including expert fees, mediation fees, mailing costs, and costs of court reporters, that might have been avoided or reduced had Sierra Pacific raised the issue of arbitration sooner. Plaintiffs sought evidentiary sanctions precluding Sierra Pacific from introducing arbitration agreements signed by the signatory employees into evidence and issue

9

sanctions precluding Sierra Pacific from arguing that the signatory employees had signed arbitration agreements.

Sierra Pacific opposed the motion. Sierra Pacific argued it complied with the February 2020 order by way of its supplemental response to request for production No. 15, in which it produced an unsigned form of arbitration agreement and reported that 2,000 non-exempt employees had signed the form. Sierra Pacific emphasized that plaintiffs waited more than three years to challenge its supplemental response and observed that arbitration agreements for signatory employees had recently been produced in response to Dunehew's request for production. Sierra Pacific insisted that its litigation conduct was "exemplary," "compliant," and "transparent."

The trial court disagreed and granted plaintiffs' motion for evidentiary and issue sanctions by order dated August 29, 2023. We will discuss the sanctions order in greater detail in a moment.

## G. Arbitration Order

The trial court's statement of decision determined Sierra Pacific waived its contractual right to arbitration under the multifactor test set forth in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*). Specifically, the trial court found Sierra Pacific's actions were " ' "inconsistent with the right to arbitrate" ' " (*id.* at p. 1196), inasmuch as the company "willfully withheld the arbitration agreements" in violation of the February 2020 order, participated in extensive discovery relating to the signatory employees, and relied upon evidence obtained from those employees to oppose class certification. The trial court further found that " 'the litigation machinery [had] been substantially invoked,' " given the history of discovery between the parties, their participation in two separate mediations aimed at achieving a classwide settlement, and the fact that the court had amassed a 27-volume court file by the time Sierra Pacific filed its motion to compel.

10

The trial court observed that Sierra Pacific characterized the putative class of 1,388 as a " 'representative sample of putative class members' " in a joint status report, despite the fact that nearly half the group had signed arbitration agreements. The trial court also observed that Sierra Pacific made no mention of arbitration in the "[e]xplanation of [i]nterview" given to signatory employee declarants, adding that, if Sierra Pacific intended to compel arbitration, there was "no valid reason to not fully inform these individuals (at the time that they were being asked to participate in the class action) that they may be excluded from the putative classes on the basis that they had signed arbitration agreements."

The trial court recognized that Sierra Pacific had been unable to file the motion to compel arbitration before class certification under *Sky Sports, supra.* "However," the trial court observed, "not being able to bring the motion as to unnamed class members prior to class certification is not the sole issue before the Court. The Court has also considered the conduct of [Sierra Pacific] including: the failure to identify the affirmative defense of arbitration . . . in its Answer filed on November 19, 2018 . . . , the failure to provide the arbitration agreements in response to discovery and the Court's Order, conducting discovery as if those arbitration agreements did not exist, using arbitration signers to litigate the class certification motion while simultaneously informing arbitration signers that they may be putative class members, and mediating the matter as if those arbitration agreements did not exist." Accordingly, the trial court concluded: "This conduct and the totality of the circumstances amounts to a waiver of [Sierra Pacific's] right to compel arbitration, even recognizing the heavy burden of proof." Sierra Pacific appeals the arbitration order.

## H.    *Sanctions Order*

The sanctions order focused on Sierra Pacific's responses to request for production No. 15. The trial court described granting plaintiffs' motion to compel further responses to request for production No. 15 in the February 2020 order, which stated, in pertinent

11

part: "In the absence of a request for a protective order or any information related to confidentiality, the motion to compel is granted. Defendant is ordered to comply with this request." The trial court rejected Sierra Pacific's argument that the arbitration agreements contained confidential identifying information, which the company addressed by producing "the equivalent of a redacted agreement."[7]

The trial court explained: "The Court's ruling was not that [Sierra Pacific] could unilaterally infer confidentiality and decide to not comply with the [February 2020] Order. In fact, [Sierra Pacific] had argued third party confidentiality in the underlying motion and the Court concluded that [Sierra Pacific] had not demonstrated any third-party confidentiality with regard to the arbitration agreements. Counsel for both sides and the Court have previously addressed (in informal discovery conferences and motions) that the identity of employee/witnesses is not protected and is discoverable as opposed to payroll/wage and other personnel information. This was clearly distinguished in the Court's February 3, 2020, Order." The trial court thus concluded that Sierra Pacific and its counsel "have misused the discovery process by continuing to make, without substantial justification, an unmeritorious objection to discovery, by making an evasive discovery response, and by violating the Court's February 3, 2020, Order."

Having found that Sierra Pacific misused the discovery process, the trial court next considered what sanctions, if any, would be appropriate. The trial court observed that Sierra Pacific's failure to produce signed arbitration agreements prejudiced plaintiffs by allowing them to spend time and money on discovery involving the signatory employees and expert analysis of their potential claims. The trial court also observed that Sierra Pacific had been misleading in its dealings with signatory employees interviewed in connection with the class certification motion, inasmuch as the company failed to tell

---

[7] As noted, Sierra Pacific produced an unsigned form of agreement.

12

them they might be excluded from the putative classes because they signed arbitration agreements.

The trial court next addressed Sierra Pacific's argument—renewed here—that sanctions were unwarranted because any failure to comply with the February 2020 order was not willful. "This position," the trial court said, "is not well taken in light of [Sierra Pacific] and [Sierra Pacific's] counsel's history of noncompliance with their discovery obligations in this case." The trial court noted Sierra Pacific had been on the receiving end of monetary sanctions on three prior occasions, including the two occasions mentioned above.[8]

When all was said and done, the trial court found that there had been "a pattern in this case of [Sierra Pacific] not providing discovery that is clearly responsive to the requests, then taking an unreasonable position that the discovery was not responsive." Accordingly, the trial court concluded evidence and issue sanctions were warranted. Sierra Pacific appeals the sanctions order.

## II. DISCUSSION

### A. *Arbitration Order*

Sierra Pacific argues the trial court erred in denying its motion to compel arbitration. Specifically, Sierra Pacific argues the trial court failed to anticipate our Supreme Court's decision in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 (*Quach*), and thus applied the wrong legal standard in finding waiver. Applying *Quach*, we independently conclude Sierra Pacific waived arbitration.

---

[8] Sierra Pacific was sanctioned a third time on April 24, 2023. This time, the trial court imposed monetary sanctions of $18,027 against Sierra Pacific and its counsel for failing to produce responsive emails regarding the company's bell schedule.

13

1. *Applicable Legal Principles and Standard of Review*

Code of Civil Procedure section 1281.2 provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner."[9]

Until recently, California courts relied on the factors set forth in *St. Agnes* to evaluate waiver. There, the high court explained: " 'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes, supra*, 31 Cal.4th at p. 1196.) As noted, the trial court here applied the *St. Agnes* factors.

The Supreme Court changed course in *Quach*, which came out after the trial court's ruling. (*Quach, supra*, 16 Cal.5th at p. 584.) *Quach* abrogated the multifactor *St. Agnes* test, stating: "Courts should not apply the *St. Agnes* factors as a single multifactor test for determining whether the right to compel arbitration has been lost through litigation. [Citations.] Instead, a court should be careful to consider only those factors

---

[9] Undesignated statutory references are to the Code of Civil Procedure.

that are relevant to the specific state law defense the party resisting arbitration has raised." (*Ibid*.)  There, as here, the specific state law defense to arbitration was waiver. (*Id.* at p. 569.)

The *Quach* court then reviewed generally applicable waiver principles.  (*Quach, supra*, 16 Cal.5th at pp. 584-585.)  "To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it.  [Citations.]  Under the clear and convincing evidence standard, the proponent of a fact must show that it is 'highly probable' the fact is true.  [Citation.]  The waiving party's knowledge of the right may be 'actual or constructive.'  [Citation.]  Its intentional relinquishment or abandonment of a right may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable fact finder to conclude that the party had abandoned it."  (*Id.* at p. 584; see also *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 419 [Under the Federal Arbitration Act, the waiver inquiry focuses on the conduct of the party seeking to enforce the arbitration agreement and asks whether he or she "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right"].)

"The waiver inquiry is exclusively focused on the waiving party's words or conduct; neither the effect of that conduct on the party seeking to avoid enforcement of the contractual right nor that party's subjective evaluation of the waiving party's intent is relevant.  [Citations.]  This distinguishes waiver from the related defense of estoppel, 'which generally requires a showing that a party's words or acts have induced detrimental reliance by the opposing party.'  [Citations.]  To establish waiver, there is no requirement that the party opposing enforcement of the contractual right demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct."  (*Quach, supra*, 16 Cal.5th at p. 585, fn. omitted.)

15

We ordinarily review the trial court's waiver finding for substantial evidence. (*Campbell v. Sunshine Behavioral Health, LLC* (2024) 105 Cal.App.5th 419, 428.) Because the trial court did not have the benefit of our Supreme Court's decision in *Quach*, we will review de novo the undisputed record of trial court proceedings, asking whether plaintiffs have " 'established by clear and convincing evidence' " that Sierra Pacific " 'knew of its contractual right to compel arbitration and intentionally relinquished or abandoned that right.' " (*Ibid.*, quoting *Quach, supra*, 16 Cal.5th at p. 585.)

2.      *Analysis*

Following *Quach*, plaintiffs now bear the burden of establishing by clear and convincing evidence that: (1) Sierra Pacific had actual or constructive knowledge of its right to compel arbitration; and (2) Sierra Pacific's conduct was so inconsistent with an intent to enforce that right as to lead a reasonable factfinder to conclude Sierra Pacific had abandoned it. (*Quach, supra*, 16 Cal.5th at p. 585.) Sierra Pacific does not deny having had actual or constructive knowledge of its own arbitration agreements. Therefore, we focus on whether plaintiffs have established by clear and convincing evidence that Sierra Pacific's conduct was so inconsistent with an intent to arbitrate as to effect waiver. Based on our independent review, we conclude they have.

The undisputed record of trial court proceedings demonstrates that Sierra Pacific's "words and conduct [were] markedly inconsistent with an intent to arbitrate." (*Quach, supra*, 16 Cal.5th at p. 587.) Sierra Pacific spent years litigating this case in the trial court. For much of that time, Sierra Pacific actively resisted plaintiffs' efforts to discover the extent to which putative class members might be subject to arbitration. Sierra Pacific refused for years to identify signatory employees or produce signed arbitration agreements, going so far as to defy the trial court's February 2020 order. That conduct was obviously inconsistent with an intent to arbitrate, as even Sierra Pacific appears to have recognized.

16

As noted, Sierra Pacific produced the signed arbitration agreements between January 27 and March 8, 2023, and moved to compel arbitration just two days later, on March 10, 2023. The timing of these events, after years of resisting production of the agreements, indicates Sierra Pacific viewed the production of arbitration agreements as a necessary precursor to the filing of a motion to compel arbitration, as indeed it was. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 [the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence]; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) A reasonable factfinder would be compelled to conclude the converse was also true: Sierra Pacific's refusal to produce arbitration agreements was inconsistent with an intent to arbitrate.

Though Sierra Pacific couched its refusal in terms of privacy concerns, the company made no effort to address those concerns through appropriate avenues, such as a protective order limiting precertification discovery to exclude signatory employees. Instead, Sierra Pacific participated in extensive class discovery—both responding and propounding—all while saying nothing about any intent to arbitrate. And Sierra Pacific went beyond merely keeping quiet. Sierra Pacific repeatedly implied the signatory employees were part of the putative class(es), whose claims were to be litigated, rather than arbitrated.

As previously discussed, Sierra Pacific participated in significant class discovery involving the signatory employees while refusing to identify them as such. Sierra Pacific included records and information for 642 signatory employees in discovery responses pertaining to a putative class of 1,388, without differentiating between signatories and non-signatories, or giving plaintiffs the information necessary to do so. This signaled that Sierra Pacific was not planning to enforce the arbitration agreements. That signal was amplified by Sierra Pacific's participation in the first of two separate mediations that

17

would have resolved the claims of signatory employees, and its representations to the trial court and signatory employees asked to provide declarations. And the signal would have grown louder—unmistakably so—when Sierra Pacific deleted arbitration from the long list of affirmative defenses in its answer to plaintiffs' second amended complaint. Applying our independent judgment and considering the totality of the circumstances, we conclude the undisputed record of trial court proceedings contains clear and convincing evidence that Sierra Pacific intentionally waived the right to compel arbitration.

Sierra Pacific resists this conclusion, arguing waiver typically involves an unreasonable delay in moving to compel arbitration, and Sierra Pacific could not move to compel arbitration until the classes were certified. This argument has some force. After all, Sierra Pacific could not compel arbitration against plaintiffs (who never signed arbitration agreements), and so had to wait until the signatory employees joined the action through class certification before it could file a motion with any chance of success. (See *Sky Sports, supra*, 201 Cal.App.4th at p. 1365.) As the *Sky Sports* court explained, in granting a writ petition directing the trial court to vacate an order finding the defendant waived the right to compel arbitration: "We assume that had the company brought a motion to compel arbitration before class certification, the trial court would have denied the motion because [the named plaintiff] was not a party to the arbitration agreement. Thus, any delay in bringing the motion to compel arbitration until the class was certified to include parties to the arbitration agreement cannot constitute a waiver by the company." (*Id.* at p. 1369.) The same reasoning applies here, to a point.

We have no quarrel with the idea that Sierra Pacific's failure—or inability—to bring a motion to compel arbitration prior to class certification cannot by itself constitute waiver. (*Sky Sports, supra*, 201 Cal.App.4th at p. 1369.) But Sierra Pacific takes this idea a step further, arguing we should confine our waiver inquiry to litigation conduct occurring after class certification. Here is where we disagree.

18

As we have suggested, waiver determinations rest on " 'the totality of the parties' actions,' " which encompasses actions taken before class certification. (See generally *Armstrong v. Michaels Stores, Inc.* (9th Cir. 2023) 59 F.4th 1011, 1015 [under *Morgan v. Sundance, supra*, 596 U.S. 411*,* courts must examine " 'the totality of the parties' actions' " to determine whether those actions holistically " 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate' "]; see also *Hofer v. Boladian* (2025) 111 Cal.App.5th 1, 14 ["the inquiry into whether it is 'highly probable' the party has, by their conduct, intentionally relinquished or abandoned the right to arbitrate takes into account the totality of that conduct"].) We have difficulty reconciling our charge to consider the totality of the parties' actions with Sierra Pacific's invitation to narrowly focus on post-certification conduct.

In any case, we are convinced that arbitration rights can be waived before they become enforceable. The Ninth Circuit's decision in *Hill v. Xerox Business Services, LLC* (9th Cir. 2023) 59 F.4th 457 (*Hill*) is instructive. There, the plaintiff, Tiffany Hill, worked as an agent in a call center operated by the defendant, Xerox Building Services, LLC (Xerox) in Washington State. (*Id.* at pp. 460-461.) Hill brought a putative class action against Xerox for violations of Washington state law in April 2012. (*Id.* at p. 461.) At the time, most call center agents were required to arbitrate employment disputes pursuant to a dispute resolution plan that was adopted by Xerox in 2002 (the 2002 Resolution Plan). (*Id.* at pp. 460-461.) After Hill brought suit, Xerox adopted a second dispute resolution plan (the 2012 Resolution Plan). (*Id.* at p. 461.) Hill did not sign either dispute resolution plan. (*Ibid.*)

Litigation proceeded in the federal district court. Xerox asserted a right to compel arbitration under the 2012 Resolution Plan throughout the district court proceedings, including in its answer to the operative second amended complaint, in discovery documents, in a motion for summary judgment, and in opposition to Hill's motion for

class certification. (*Hill, supra*, 59 F.4th at pp. 461-463.) But "X[erox] made no explicit mention of the 2002 Resolution Plan and continued to treat those who had signed the 2002 agreement as part of the putative class X[erox] opposed." (*Id.* at p. 462.) The district court provisionally certified a class of call center agents which excluded agents that signed the 2012 Resolution Plan. (*Id.* at p. 463.) The case was then stayed while Xerox pursued an unsuccessful interlocutory appeal of the denial of summary judgment. (*Id.* at p. 465.)

In a joint status report filed after the stay was lifted, Xerox asserted the right to compel arbitration under the 2002 Resolution Plan for the first time, arguing the district court should exclude signatories of both the 2002 Resolution Plan and the 2012 Resolution Plan when finalizing the class definition. (*Hill, supra*, 59 F.4th at p. 466.) The district court excluded signatories to the 2012 Resolution Plan from the final class definition without addressing Xerox's attempt to assert rights under the 2002 Resolution Plan. (*Id.* at pp. 466-467.) Xerox thereafter advised the district court that it had worked with Hill to generate a list of 5,772 class members that included signatories to the 2002 Resolution Plan but anticipated moving to compel arbitration with respect to those signatories after the class notice was distributed and the opt-out period closed. (*Id.* at p. 467.) The day after the notice administrator submitted his report on the final class size, Xerox moved to compel arbitration with respect to the 2,927 class members who had signed the 2002 Resolution Plan. (*Id.* at p. 468.) The district court determined that Xerox had waived its right to compel arbitration under the 2002 Resolution Plan. (*Ibid.*)

On appeal, Xerox argued it had not waived the right to compel arbitration because Hill was not a signatory to the 2002 Resolution Plan, and there was no existing right to compel arbitration as to any absent class member until class certification had been granted and the notice and opt-out period had closed. (*Hill, supra*, 59 F.4th at pp. 461, 468.) "In one rather limited sense," the Ninth Circuit said, Xerox was correct because "the district court could not compel nonparties to the case to arbitrate until after a class

20

had been certified and the notice and opt-out period were complete." (*Id.* at p. 469.) "However," the federal appellate court continued, "what X[erox] fails to appreciate is that waiver is a unilateral concept. A finding of waiver by X[erox] looks only to the acts of X[erox], binds only X[erox], does not reach out to affect the rights of as then-unnamed class members, and does not depend upon when the law requires or authorizes such a right to be asserted." (*Ibid.*)

The Ninth Circuit explained that Xerox waived its right to compel arbitration under the 2002 Resolution Plan by failing to assert its rights under the dispute resolution plan earlier in the case, engaging in extensive discovery regarding the claims of putative class members without attempting to exclude signatories of the 2002 Resolution Plan, and seeking judicial resolution on the merits by moving for summary judgment and appealing from the denial of that motion. (*Hill, supra*, 59 F.4th at pp. 473-476.) "Overall," the Ninth Circuit concluded, "considering the *totality* of the circumstances, as we must, we hold that the district court properly found that X[erox] has acted inconsistently with its right to compel arbitration under the 2002 [Resolution Plan]." (*Id.* at p. 479, fn. omitted.)

*Hill,* though not on all fours with the present case, convinces us that waiver can be based on pre-certification conduct. (*Hill, supra*, 59 F.4th at pp. 469-470.) That Sierra Pacific could not move to compel arbitration before class certification does not mean it could not engage in conduct "so inconsistent with an intent to enforce the contractual right as to lead a reasonable factfinder to conclude that the party had abandoned it." (*Quach, supra*, 16 Cal.5th at p. 584.) Just as Sierra Pacific could affirmatively renounce arbitration ahead of class certification, so too could it impliedly waive arbitration through pre-certification conduct inconsistent with an intent to arbitrate. As we have explained, Sierra Pacific's overall litigation conduct was manifestly inconsistent with an intent to arbitrate, and so constituted clear and convincing evidence of waiver, despite the fact much of it preceded the trial court's ruling on class certification.

21

*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), overruled on other grounds in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), and *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281 (*Piplack*), on which Sierra Pacific relies, do not convince us otherwise.

In *Iskanian*, an employee brought a class action lawsuit on behalf of himself and similarly situated employees for his employer's failure to compensate employees for overtime and meal and rest periods. (*Iskanian, supra*, 59 Cal.4th at p. 359.) The employer responded with a successful motion to compel arbitration. (*Id.* at p. 361.) The California Supreme Court then decided *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), which held that "class action waivers in employment arbitration agreements are invalid under certain circumstances." (*Iskanian, supra*, at p. 361.) The employer withdrew its motion to compel, and the action was litigated in the trial court for several years. (*Ibid.*) The parties engaged in discovery, including class discovery, and litigated a class certification motion. (*Id.* at p. 375.) The trial court certified a class in October 2009. (*Ibid.*) Some 18 months later, in April 2011, the United States Supreme Court issued *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*), which cast doubt on *Gentry*. (*Id.* at p. 352; *Iskanian, supra*, at p. 375.) The employer then renewed its petition to compel arbitration. (*Iskanian, supra*, at p. 361.) The trial court granted the motion, and the employee appealed. (*Id.* at p. 362.)

On appeal, the employee argued the employer waived its arbitration rights by failing to diligently pursue them. (*Iskanian, supra*, 59 Cal.4th at p. 374.) Our Supreme Court disagreed, finding the employer's delay in pursuing arbitration "was reasonable in light of the state of law at the time and [the employee's] own opposition to arbitration." (*Id.* at p. 377.) Applying *St. Agnes,* the court found the employee was not prejudiced by the time spent litigating the matter in the trial court, adding: "Where, as here, a party promptly initiates arbitration and then abandons arbitration because it is resisted by the opposing party and foreclosed by existing law, the mere fact that the parties then proceed

22

to engage in various forms of pretrial litigation does not compel the conclusion that the party has waived its right to arbitrate when a later change in the law permits arbitration." (*Id.* at pp. 377-378.)

*Piplack* is similar. There, two employees brought PAGA claims on their own behalf and on behalf of similarly situated employees against their former employer in late 2019. (*Piplack, supra*, 88 Cal.App.5th at pp. 1285-1286.) "Initially, the case proceeded in relatively ordinary fashion, with the filing of answers, demurrers, amended complaints, and a discovery motion." (*Id.* at p. 1286.) However, the United States Supreme Court granted certiorari in *Viking River* in December 2021 (*Viking River Cruises v. Moriana* (2021) __ U.S. __ [142 S.Ct. 734, 211 L.Ed.2d 421]), and the employer filed a motion to compel arbitration in February 2022, explaining that it expected the high court to overturn or materially change *Iskanian*'s ban on arbitration agreements requiring arbitration of PAGA claims. (*Piplack, supra*, at p. 1286.) The trial court denied the motion, and the employer appealed. (*Ibid.*)

The Court of Appeal reversed, rejecting the employees' claim that the employer "waived its right to arbitrate by delaying seeking arbitration, participating in litigation in the trial court, omitting arbitration as an affirmative defense in its answer to plaintiffs' first amended complaint, and engaging in settlement negotiations in this and other PAGA cases." (*Piplack, supra*, 88 Cal.App.5th at p. 1289.) Reasoning by analogy to *Iskanian*, the court observed the employer "raised its right to arbitrate as soon as it had any chance of success." (*Ibid.*) The court elaborated: "The fact that defendant vigorously defended itself in the trial court [made] no difference because the relevant question [was] whether there was any *unreasonable* delay," and the defendant's failure to request arbitration before *Viking River* was not unreasonable. (*Ibid.*)

These cases are readily distinguishable. Unlike the defendants in *Iskanian* and *Piplack*, Sierra Pacific was not confronted with an intervening change in law affecting the scope of its arbitration rights. (*Iskanian, supra*, 59 Cal.4th at p. 376; *Piplack, supra*, 88

23

Cal.App.5th at p. 1289.) The trial court's class certification ruling would not have changed Sierra Pacific's understanding of its arbitration rights or established the existence of rights where before there were none. Though Sierra Pacific may have lacked the ability to compel arbitration against the signatory employees prior to class certification, "nothing about the timing of when the right [to arbitrate] can be protected affects a party's present ability to act inconsistently with it." (*Hill, supra*, 59 F.4th at p. 469, fn. 15.) As we have explained, the undisputed record of trial court proceedings compels the conclusion that Sierra Pacific waived its right to compel arbitration.

Shifting gears, Sierra Pacific faults the trial court for relying on selected aspects of its pre-certification litigation conduct to find waiver. Specifically, Sierra Pacific argues the trial court erred in relying on its participation in two separate mediations, its failure to plead arbitration as an affirmative defense, its failure to seek a protective order, and its failure to tell signatory employees they would not be entitled to participate in any class action recovery. These arguments require only brief consideration.

To begin, we reject Sierra Pacific's invitation to "take a divide-and-conquer approach by examining whether each aspect of their litigation conduct *by itself* demonstrates a waiver." (*Hofer v. Boladian, supra*, 111 Cal.App.5th at p. 14.) As previously discussed, "the inquiry into whether it is 'highly probable' the party has, by their conduct, intentionally relinquished or abandoned the right to arbitrate takes into account the totality of that conduct." (*Ibid.*) We therefore have no occasion to decide whether any single aspect of Sierra Pacific's litigation conduct would suffice to independently establish waiver. But even setting that concern aside, Sierra Pacific's arguments fail to persuade.

Sierra Pacific argues participating in two separate mediations was not inconsistent with an intent to arbitrate because settlement efforts are "strongly favored" and "the two mediations did not delay arbitration." These arguments miss the point. The mediations were inconsistent with an intent to arbitrate because they were undertaken in the hopes of

24

achieving a settlement of all class claims, including those of the signatory employees.[10] Sierra Pacific would have had "no plausible reason to agree to mediate on a classwide basis" if it intended to compel arbitration of the signatory employees' individual claims. (*Campbell v. Sunshine Behavioral Health, LLC, supra*, 105 Cal.App.5th at p. 432; see also *Garcia v. Haralambos Beverage Co.* (2021) 59 Cal.App.5th 534, 543 [employer's participation in classwide mediation was one of several actions inconsistent with intent to arbitrate].)

Sierra Pacific next takes issue with the trial court's observation that it could have communicated its intention to arbitrate earlier. According to Sierra Pacific, that intention was communicated through its answer to the first amended complaint, its participation in discovery and related litigation over plaintiffs' attempts to discover the arbitration agreements, and its opposition to plaintiffs' motion for class certification. These "communications" would have done little to notify plaintiffs or the trial court of any alleged intent to arbitrate. As noted, Sierra Pacific's answer to the first amended complaint (which mentions arbitration) was superseded by its answer to the operative second amended complaint (which does not). The hallmark of its participation in discovery so far as arbitration was concerned was its refusal to produce signed arbitration agreements for the signatory employees. As we have explained, such conduct can hardly be squared with an intent to arbitrate. That leaves Sierra Pacific's opposition to plaintiffs' motion for class certification, which was filed in January 2022, after more than three years of litigation. Far from communicating an intent to arbitrate, Sierra Pacific's

---

[10] Sierra Pacific argues there was no evidence the mediations were intended to achieve classwide settlements. However, the record indicates otherwise. Though Sierra Pacific objected to much of this evidence, the trial court overruled those objections, and Sierra Pacific does not appeal from any evidentiary ruling set forth in the arbitration order.

" 'extended silence and much delayed demand for arbitration' cuts strongly in favor of a finding of waiver." (*Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 968.)

Sierra Pacific next argues the trial court invented the requirement that it seek a stay or protective order, then based its waiver determination on Sierra Pacific's failure to comply with the supposed requirement. Nothing in the record suggests the trial court posited any such requirement or faulted Sierra Pacific for failing to comply with it. The trial court merely observed that Sierra Pacific's privacy concerns would have been more appropriately addressed through a stay of discovery or protective order, rather than noncompliance with the February 2020 order. We agree.

Finally, Sierra Pacific argues it was entitled to interview the signatory employees and adduce evidence from them concerning class certification issues and was not required to advise them about any arbitration agreements they may have signed. These arguments are strawmen. The arbitration order does not say Sierra Pacific was not permitted to interview signatory employees or adduce evidence from them. Nor does the arbitration order suggest Sierra Pacific had an obligation to advise signatory employees with respect to the arbitration agreements. Even assuming the trial court had so held, we would still find any error to be harmless because we independently conclude that Sierra Pacific's representations to the signatory employees regarding arbitration, both express and implied, were inconsistent with an intent to arbitrate.

B.    *Sanctions Order*

Sierra Pacific next argues the trial court abused its discretion in entering the sanctions order. Plaintiffs respond that the sanctions order is nonappealable. We agree with plaintiffs.

"A trial court's order is appealable when it is made so by statute." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) "A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Ibid.*) " 'The appealability of the judgment or order is

26

jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed.'" (*J.H. Boyd Enterprises, Inc. v. Boyd* (2019) 39 Cal.App.5th 802, 810 (*Boyd*).)

No statute authorizes direct appeal from an order imposing evidentiary or issue sanctions. (See § 904.1, subd. (a)(11) [ authorizing appeal from an order imposing monetary sanctions in an amount greater than $5,000].) In the absence of any such statute, Sierra Pacific directs our attention to section 1294, subdivision (a), which authorizes an appeal from "[a]n order dismissing or denying a petition to compel arbitration."

Sierra Pacific argues the sanctions order was effectively an order denying a petition to compel arbitration, making it appealable under section 1294, subdivision (a). We disagree. A motion to compel arbitration under section 1281.2 and a motion for evidentiary or issue sanctions under section 2023.030 are distinct procedures with different purposes. The Legislature has decided that an order denying a petition to compel arbitration should be directly appealable under section 1294, while an order granting evidentiary or issue sanctions should not be. (§ 904.1, subd. (a)(11).) Furthermore, even accepting that an order granting evidentiary or issue sanctions may in some cases be substantively similar to an order denying a motion to compel arbitration, that was not the case here, where there were separate motions, concerned with separate issues. That Sierra Pacific's failure to produce the arbitration agreements played a role in both motions does not make them the same in substance or effect.

Sierra Pacific also invokes section 1294.2, which provides "ancillary appellate jurisdiction over orders affecting appealable arbitration orders." (*Boyd*, *supra*, 39 Cal.App.5th at p. 811.) Section 1294.2 provides, in pertinent part: "Upon an appeal from any order or judgment under this title [governing arbitration], the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially

27

affects the rights of a party."  " 'But the ancillary jurisdiction conferred by section 1294.2 simply ensures that the appellate court can effectuate its ruling on an arbitration order, by permitting review of any other trial court decision affecting that specific order.' " (*Boyd, supra*, at p. 812.)

For example, an appellate court reviewing an order denying a motion to compel arbitration under 1294, subdivision (a) may exercise ancillary jurisdiction to review a related order denying a request to stay proceedings pending arbitration under section 1294.2, even though such an order would not generally be appealable, if " 'the appellate court's determination on the motion to compel arbitration would have been ineffectual' " if the denial of the request for a stay were not also reviewed. (*Boyd, supra*, 39 Cal.App.5th at p. 812.)  By contrast, an order granting arbitration would not be appealable under section 1294.2 merely because it was rendered at the same time as an order denying arbitration. (See *Laymon v. J. Rockcliff, Inc.* (2017) 12 Cal.App.5th 812, 825.)  In *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, for example, the appellate court declined to extend ancillary jurisdiction over an order denying arbitration as to a non-signatory real estate agent in a commercial real estate transaction, while compelling arbitration as to the buyer and seller in the same transaction. (*Id.* at pp. 761-762.)  The court rejected the argument that the non-appealable order compelling arbitration "was 'intertwined' with" the appealable order denying arbitration, finding the two orders were "logically separate and not intermediate to each other." (*Id.* at pp. 768, 769.)  So too here.

The sanctions order is not intermediate to the arbitration order.  (§ 1294.2.)  Although the arbitration order mentions the sanctions order, the orders are "logically separate" (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc., supra*, 129 Cal.App.4th at p. 769), and we do not need to review the sanctions order to "effectuate" our ruling on the arbitration order.  (*Boyd, supra*, 39 Cal.App.5th at p. 812.)  We therefore conclude the sanctions order does not fall within our ancillary jurisdiction

28

under section 1294.2 and dismiss that portion of Sierra Pacific's appeal for lack of jurisdiction.

### III. DISPOSITION

The order denying Sierra Pacific's motion to compel arbitration is affirmed. Plaintiffs are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


/S/

_____
RENNER, J.



We concur:


/S/

_____
EARL, P. J.


/S/

_____
ROBIE, J.


29